661 F.2d 759
 Bankr. L. Rep. P 68,502
In re COLORADO SPANISH PEAKS RANCH, INC., Debtor.
The TRAVELERS INSURANCE COMPANY, a Connecticut Corporation,
Plaintiff-Cross-Defendant-Appellee,
v.
COLORADO SPANISH PEAKS RANCH, INC., etc.,
Defendant-Cross-Complainant-Appellant.
 Nos. 79-3533, 80-5257.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 5, 1981.
Decided Nov. 16, 1981.
 
 Marvin Neben, Neben & Starrett, Newport Beach, Cal., for defendant-cross-complainant-appellant.
 Marc A. Levinson, Sidley & Austin, Los Angeles, Cal., for plaintiff-cross-defendant-appellee.
 Appeals from the United States District Court for the Central District of California.
 Before DUNIWAY, PREGERSON and CANBY, Circuit Judges.
 DUNIWAY, Circuit Judge:
 
 
 1
 These are two appeals from orders of the district court in a proceeding under Chapter XI of the old Bankruptcy Act. We affirm.
 
 
 2
 I. Facts.
 
 
 3
 The facts underlying the first appeal, No. 79-3533, are these:
 
 
 4
 In July, 1973, the Travelers Insurance Company (Travelers) loaned $900,000.00 to Colorado Spanish Peaks Ranch (Spanish), taking a note, secured by a first mortgage on 29,000 acres of Colorado mountain ranch land which Spanish planned to subdivide and sell to the public in parcels. The first payment on the loan was due in January, 1974, with further payments to follow. However, Spanish has never made any payments on the loan, either principal or interest, and Travelers, since making the loan, has been compelled to advance various property taxes and lease payments in order to protect its interest in the ranch.
 
 
 5
 Travelers filed a foreclosure proceeding in the Colorado state court, shortly after which, in August 1974, Spanish filed the Chapter XI petition which automatically stayed the state court foreclosure proceeding. Travelers then asked permission of the bankruptcy court to proceed with its judicial foreclosure. In response, Spanish counterclaimed, alleging breach of contract. It claimed that when the loan was made, Spanish intended, and Travelers knew that it intended, to subdivide the ranch and sell it off in 36 acre parcels. The note and deed of trust therefore contained provisions permitting parcels to be sold free and clear of the mortgage upon the payment of an agreed price per acre. The provision in dispute is a proviso which permits such release, "provided that at the time of the release CSPR (Spanish) was current in its obligations under the note and mortgage." (Emphasis ours)
 
 
 6
 At or about the time the note and mortgage were executed there was some discussion between Mr. Keller, representing Spanish, and Mr. Palmes, attorney for Travelers, about the interpretation of the proviso. Mr. Keller testified that he was told by Mr. Palmes "not to worry" about the clause as written. There is no written memorandum of any kind relating to any such alleged modification or interpretation. Nevertheless, the bankruptcy judge made the following finding: "Mr. Keller and Mr. Palmes orally modified the release provisions of the mortgage during their telephone conversations and meetings prior to and contemporaneously with the execution of the mortgage."
 
 
 7
 The bankruptcy judge further found that the terms of the note and trust deed, as so modified, had been breached when, late in 1973, Mr. Palmes stated that partial releases would not be executed by Travelers unless the loan was current. Because of this breach, the judge also found, Spanish was forced to cease its business operations. On this assumption and by making allowances for damages suffered by Spanish, the judge determined the amount of the indebtedness due Travelers to be the sum of $962,220.08 as of November 8, 1976. But the judge also found that, if his finding that Travelers breached the oral modification of the mortgage release clause was not sustained by the appellate courts, Spanish's indebtedness to Travelers would be the sum of $1,317,489.53 as of November 8, 1976.
 
 
 8
 As to the value of the ranch, Travelers produced two appraisers who testified that the market value of the property at that time was less than $1,340,000.00 as a working cattle ranch, which they opined was the highest and best use of the land. Spanish, on the other hand, produced no evidence of the fair market value of the ranch and no evidence as to the highest and best use of the land. Instead, it called a witness who was not qualified as an expert who testified that if the ranch lands were sold in parcels upon contract with 10%-15% down and the balance payable in installments over a 10-year period, the land sales would gross $300.00 per acre.
 
 
 9
 The bankruptcy judge found that the fair market value of the ranch as of January 1, 1977 was a minimum of $2,500,000.00, and, presumably on this basis, refused to lift the stay on the state foreclosure proceedings.
 
 
 10
 II. The Law.
 
 
 11
 On Travelers' appeal to the district court, that court reversed, and held that Travelers is entitled to enforce its lien. The bankruptcy judge correctly held that Colorado law applies, and we find the parol evidence rule to be well established in that state. As the Colorado Court of Appeals has stated, the parol evidence rule "... is still alive and well in Colorado...." Stevens v. Vail Associates, Inc., 1970, 28 Colo.App. 344, 348, 472 P.2d 729, 730. See also Randolph v. Helps, Colo., 1886, 10 Pac. 245. Accordingly, the district court concluded that the bankruptcy judge's finding of a modification and breach of that modification cannot be upheld. We agree.
 
 
 12
 The district court held that the testimony of Spanish's valuation witness was worthless because, among other things, it rested upon the assumption that the land would be subdivided, yet no costs had been shown for preparing the land for sale. The district court took judicial notice that subdivision costs vary over a wide range and often exceed the cost of acquiring the property. It pointed out that Spanish made no attempt to prove the fair market value of the property. In determining whether or not there is a present equity, the indebtedness underlying the lien must be measured against the then market value of the property. The only relevant evidence of the market value of the property was that of Travelers' witnesses, that the market value was not in excess of $1,340,000.00. Deducting the amount of the debt as of November 8, 1976, which the bankruptcy judge determined to be $1,317,489.53, a small equity would result. Even by 1979, however, it had been more than exhausted by interest, taxes, and other payments made by Travelers in order to protect its interest. Thus, Travelers was and is entitled to enforce its lien, as the district court found. See Lance, Inc. v. Dewco Services, Inc., 9 Cir., 1970, 422 F.2d 778.
 
 
 13
 III. The Second Appeal.
 
 
 14
 On remand, the bankruptcy judge revoked the stay, thus permitting Travelers to foreclose. In the light of our decision on the first appeal, this was not error.
 
 
 15
 IV. Mootness.
 
 
 16
 Travelers suggests that the appeals are moot, because Spanish has arrived at an arrangement with its unsecured creditors, so that the purpose of the Chapter XI proceeding has been accomplished. However, in approving the arrangement, the bankruptcy judge expressly retained jurisdiction over Travelers and the mortgage pending decision by us, and by the Supreme Court if there be a decision by that Court. The appeals are not moot.
 
 
 17
 Affirmed.