**UKRAINIAN SAVINGS AND LOAN ASSOCIATION**

v.

**The TRIDENT CORPORATION.**

Civ. A. No. 82–2816.

United States District Court, E. D. Pennsylvania.

Aug. 6, 1982.

William J. McDevitt, Hepburn, Wilcox, Hamilton & Putnam, Philadelphia, Pa., for plaintiff-appellee.

John T. Curtin, Philips, Curtin & DiGiacomo, Philadelphia, Pa., for defendant-appellant.

## OPINION

LUONGO, Chief Judge.

Appellant, The Trident Corporation (Trident) appeals from an order of the Bankruptcy Court terminating the automatic stay of judicial proceedings against certain real property owned by Trident. *See* 11 U.S.C. § 362(d)(1). Appellee, Ukrainian Savings and Loan Association (the Bank), which moved in the Bankruptcy Court for termination of the stay, is the first mortgagee of the property. For the reasons stated hereafter, the order of the Bankruptcy Court will be affirmed, Bkrtcy., 19 B.R. 956.

The facts underlying this appeal are relatively straightforward. On February 8, 1974, Trident executed a warrant and bond secured by a mortgage granted to the Bank on property located at 644 Germantown Pike, Whitemarsh Township, Pennsylvania (the property). The face amount of the mortgage was $120,000 at 9% interest per annum. After a few years Trident fell into default on its mortgage payments and, on May 30, 1980, the Bank confessed judgment on the warrant and bond. A sheriff's sale of the property was scheduled for January 14, 1981, but did not take place because, on January 9, 1981, Trident filed a petition for relief under Chapter XI of the Bankruptcy Code, and pursuant to the automatic stay provisions of the Code, the sale was stayed. *See generally* 11 U.S.C. § 362.

On March 13, 1981, the Bank filed a complaint in the Bankruptcy Court seeking ter-

mination of the automatic stay as it applied to the property. In its complaint the Bank contended that Trident lacked equity in the property and that, under § 362(d)(2)(A) of the Code, the stay had to be terminated. On April 28, 1981, a hearing was conducted before the Bankruptcy Judge who heard testimony concerning the value of the property, the extent of Trident's indebtedness to the Bank and the extent of Trident's indebtedness to its other creditors. The Bankruptcy Judge did not, however, rule on the action to terminate the stay at this time. Rather, pursuant to an agreement between the parties, he continued the hearing to give the parties an opportunity to resolve the dispute amicably.

On March 2, 1982, almost one year later, the hearing resumed. During the interim, the Bank filed an amended complaint alleging further that Trident 1) had not made any mortgage payments since it had filed its Chapter XI petition, 2) had failed to maintain fire insurance on the property, and 3) had not paid its utility bills and taxes. Therefore, in addition to claiming that Trident lacked equity in the property, the Bank also contended that its security interest was not being adequately protected, and it alternatively sought to terminate the stay under § 362(d)(1). When the hearing continued, the Bankruptcy Judge heard further testimony concerning valuation of the property and the testimony of Trident's president concerning the use of the building and the status of Trident's business condition.

The Bankruptcy Judge rendered his decision on May 11, 1982. He found the fair market value of the property to be $280,000 and that Trident owes approximately $250,000 to its secured creditors. Thus he found that Trident has approximately a $30,000 equity cushion in the property.[1] In light of this cushion, the Bankruptcy Judge concluded that the stay could not properly be terminated pursuant to § 362(d)(2)(A).[2] The Bankruptcy Court went on to find, however, that the $30,000 equity cushion was slim and, further that it was being "constantly eroded" on account of Trident's failure to pay taxes, insurance, and interest. It also found that Trident had not made any mortgage payments since the filing of its Chapter XI petition. Accordingly, it concluded that the Bank's interest in the property was not being adequately protected and, pursuant to § 362(d)(1), it ordered that the stay be terminated as to the Germantown Pike property. This appeal followed.[3]

Trident raises four points on appeal. First, it contends that the Bankruptcy Judge erred in determining the fair market value of the property. Second, it asserts that the Bankruptcy Judge ignored uncontradicted evidence that the Bank refused mortgage payments. Third, it argues that the finding that the Bank was not adequately protected was erroneous and fourth, Trident contends that, under the circumstances of this case, the termination of the stay was error. Before I turn to consideration of these contentions, I note that the findings of fact of the Bankruptcy Judge are not to be set aside unless they

---

1. As Judge Bechtle has stated: "An equity cushion is the surplus of value remaining after the amount of indebtedness is subtracted from the fair market value of the collateral... This equity cushion protects the interests of the creditor because resort may be had to the surplus in the event that accrued interest results in an increase on the mortgage debt." *Commonwealth of Pennsylvania State Employees' Retirement Fund v. Roane*, 14 B.R. 542, 545 (D.C.E.D.Pa.1981).

2. 11 U.S.C. § 362(d)(2)(A) provides that a stay against actions against a specific piece of property shall be vacated if "the debtor does not have an equity in such property."

3. On July 9, 1982, nearly two months after the automatic stay was terminated, Trident moved for a stay of the May 11, 1982 termination order pending appeal. *See* F.R.Bankruptcy P. 805. The argument on this motion was consolidated with the argument on the merits. I denied in open court the motion for stay pending appeal because Trident failed to provide adequate assurances that it would take appropriate steps to stem the erosion of its equity cushion in the property. I informed the parties, however, that I would reentertain the motion if Trident was able to post a supersedeas bond in the amount of $200,000.

are clearly erroneous. F.R.Bankruptcy P. 810.

Trident's first and principal argument is that the Bankruptcy Judge erred in valuing the property at $280,000. Trident used the building as the headquarters for its general contracting business. In addition, Trident rented office space in the building to other tenants. The building at 644 Germantown Pike is over 200 years old and is historically certified. In order to make the building suitable for a modern business, Trident, in the words of the Bankruptcy Judge, "attractively restored" the building. Both Trident and the Bank offered expert testimony as to the value of the building. The Bank's expert used a comparable sales approach to valuation and he opined that the fair market value of the property was $220,000. In addition he also employed a capitalization approach and cost reproduction approach to valuation and reached the same conclusion. The Bank's expert, however, admitted that his appraisal using the latter two approaches was somewhat flawed. His capitalization appraisal was based on certain factual assumptions since he was not provided with Trident's operating costs for the building. The Bank's expert was also of the opinion that it was not feasible to employ a cost reproduction approach to the property because its unique nature precluded reproduction. Thus his reproduction cost figure of $220,000 was based on his assessment of what it would cost to build a new building at that location.

Trident's expert, on the other hand, only used a reproduction cost approach to valuation. He opined that the property was worth $409,000. Trident's expert based his appraisal on his inspection of the property in December of 1977, at which time he appraised the building at $292,600. The appraisal of $409,000 that he gave at the March, 1982 hearing was simply an adjustment of the original figure by reference to the Consumer Price Index to account for inflation.

The Bankruptcy Judge rejected both sides' appraisals. He stated:

Testimony from professional real estate appraisers was produced by both the plaintiff [the Bank] and the defendant [Trident]. [The Bank's] appraiser estimated the fair market value of the premises to be $220,000. The appraiser called as a witness by [Trident], stated the value of the property to be over 400,000. The Court finds that the testimony of [Trident's] appraiser is not completely reliable. This appraiser used a cost replacement approach as the basis for his valuation. Other appraisal methods were disregarded, supposedly, because of the unique nature of the subject property. The appraisal report was compiled several years ago and through reliance on a general consumer price index. The Court finds this approach to determining value is too greatly influenced by inflation. The value applied to the property by this method is artificially high. On the other hand, the plaintiff's appraiser relied almost exclusively on a comparable sales approach to value. He did not take into account the nature of the improvement on the property. This building is an attractively restored, certified historical site. Considering the quality of the building, the Court finds the fair market value to be $280,000.

■ The Bankruptcy Judge's finding in this regard is not clearly erroneous. It was well within the competence of the Bankruptcy Court not to accept the one-dimensional appraisal offered by Trident. The fact that the Bankruptcy Judge did not accept fully the appraisal offered by the Bank does not require that his valuation be set aside. See e.g., In re Eiler, slip op. No. 82–2335 (E.D.Pa. July 6, 1982) (Weiner, J.). The Bankruptcy Judge was entitled to credit the Bank's market value appraisal based on comparative sales but adjust it upward to reflect the uniqueness of and improvements to the building. I cannot conclude that the finding that the property was worth $280,000 was clearly erroneous and it will not be set aside.

■ The second point raised by Trident is that the Bankruptcy Judge erred in relying

on the lack of regular mortgage payments to set aside the stay. In support of this argument Trident contends that the undisputed evidence in the record establishes that the Bank refused to accept any payments from Trident after the initiation of Bankruptcy proceedings. Apparently it is Trident's position that, if the Bank was, in fact, inadequately protected, the lack of protection was the Bank's fault.

The "undisputed" evidence that Trident refers to is the following testimony on cross-examination by Wasyl Pospolyta, president of Trident.

Q. And you have made no payments to the Ukranian Savings and Loan since you filed this petition on January 9, 1981, is that correct?

A. That's correct. They wouldn't accept any.

(Appendix-Transcript of March 8, 1982 hearing at 66). Before Pospolyta took the stand, Trident stipulated that it had made no mortgage, tax, or insurance payments since it had filed for Bankruptcy. Other than the testimony stated above, there is no evidence in this record establishing that Trident tendered any mortgage payments to the Bank. Moreover, although the hearing was continued for nearly one year to allow the parties to resolve their dispute amicably, there is nothing in the record suggesting that Trident made any tender of payment to the Bank during that period nor is there any evidence of an attempt to make mortgage payments into Court. In light of the lack of testimony or documentary evidence in this record establishing that tenders of mortgage payments were actually made, and the clear record evidence that no payments were, in fact, made, the Bankruptcy Judge did not err in finding that the lack of mortgage payments by Trident resulted in the Bank's interest in the property not being adequately protected. Pospolyta's four word assertion that "they wouldn't

accept any" does not establish that any inadequate protection of the Bank's interest can be attributed to the Bank's asserted failure to accept mortgage payments.[4]

█ Trident next argues that the Bankruptcy Judge erred in finding that the Bank was not adequately protected. Trident's position in this regard is based solely on its argument that the Bankruptcy Judge's calculation of Trident's equity cushion in the property of $30,000 was incorrect since it was based on the appraisal of the property at $280,000. Trident further argues that any erosion of the equity cushion was caused by the Bank's alleged failure to accept mortgage payments. This argument is but a rehash of the arguments discussed earlier. As stated, the Bankruptcy Judge's valuation of the property was not clearly erroneous. Further, the evidence of record does not establish that the Bank turned down any mortgage payments. Moreover, Trident overlooks that the Bankruptcy Judge found that the equity cushion was being eroded not only by the failure to make mortgage payments, but also by Trident's failure to pay taxes and interest and to maintain insurance coverage on the property. On these facts the Bankruptcy Judge's conclusion that the Bank was inadequately protected was not error. Standing alone, the lack of periodic mortgage payments and the failure of Trident to make arrangements for such payments supports a finding of inadequate protection. *See,* 11 U.S.C. § 361, *In re Hinkle,* 14 B.R. 202 (Bkrtcy., E.D.Pa.1981); *Cf. Commonwealth of Pennsylvania Employee's Retirement Fund v. Roane,* 14 B.R. 542, 545 (D.C.E.D. Pa.1981) (Bechtle, J.) (making periodic payments provides adequate protection since it stems the erosion of the equity cushion). Further, the Bankruptcy Judge did not err in concluding that Trident's slim equity cushion[5] in the property, which was con-

---

**4.** Indeed, this entire line of argument appears to be an afterthought by Trident's counsel. In Trident's proposed findings of fact submitted to the Bankruptcy Judge, Trident did not request that the Bankruptcy Judge find that the Bank

refused tenders of mortgage payments. (*See* Appendix—Document 11).

**5.** Despite Trident's contention at oral argument to the contrary, I find no error in the Bankruptcy Judge's consideration of all of the Bank's secured indebtedness to determine whether Tri-

stantly eroding due to Trident's failure to pay interest, taxes, and insurance premiums, did not provide adequate protection to the Bank. *See e.g., In re Colorado Spanish Peaks Ranch, Inc.,* 661 F.2d 759, 761 (9th Cir. 1981); *In re Monroe Park,* 17 B.R. 934, 939 (D.C.D.Del.1982). The burden of establishing that the secured creditor's interest in the property is protected is on the debtor. 11 U.S.C. § 362(g). There is nothing in the record before this court that suggests that, in the more than one and one-half years since Trident filed its petition in Bankruptcy, Trident made any attempt to ensure that the Bank's security interest in the property would be fully protected, *see Commonwealth of Pennsylvania State Employees' Retirement Fund v. Roane, supra,* and the Bankruptcy Judge's conclusion in this regard will not be set aside.

Finally, Trident contends that even if the findings of the Bankruptcy Judge are correct and that the Bank is not adequately protected, the decision to terminate the stay was still error under the circumstances of this case. Trident argues that its continued possession of the property is essential if it is to complete a successful reorganization. Trident further argues that it ultimately will be able to pay off its creditors in full in light of its successful prosecution of a lawsuit in state court, in which it obtained a judgment of $177,518.48. But Trident has since appealed that judgment on the ground that it is entitled to damages in excess of $1,000,000, and the losing party has also appealed on the ground that the verdict and judgment in Trident's favor was improper.

██ A persuasive argument can be made that the Bankruptcy Judge was required to terminate the automatic stay upon his finding that the Bank was not adequately protected. 11 U.S.C. § 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay . . . , such as by terminating, annulling, modifying, or

conditioning such stay—(1) for cause, including lack of adequate protection in property of such party in interest. . . .

(Emphasis supplied).

Thus, by its terms, the statute seems to compel the Bankruptcy Judge to grant relief from a stay upon a finding of lack of adequate protection. *See,* 2 Collier on Bankruptcy, ¶ 362.02 at 362–23 (15th ed. 1982). Indeed, maintenance of the stay in the face of a finding of inadequate protection of a secured creditor may raise serious constitutional questions. *See, generally, Commonwealth of Pennsylvania State Employees' Retirement Fund v. Roane, supra,* 14 B.R. at 545. Resolution of this issue, however, is not necessary to decide this case. Even assuming that the Bankruptcy Judge had the discretion not to vacate the stay, I find no abuse of discretion in his decision to terminate the stay. Trident filed its Chapter XI petition in January, 1981 and has not yet come forward with a plan of reorganization. Its president admitted at the hearing before the Bankruptcy Judge that Trident has not been engaged in any construction business since 1978. There is nothing in the record to indicate Trident's willingness or ability to protect the Bank by making current mortgage, interest and tax payments or to protect the Bank from complete loss of its investment through the maintenance of insurance payments on the property. The Bankruptcy Judge withheld decision in this matter for almost a year to allow the parties to work matters out. Yet, instead of protecting the Bank's interest during that time, Trident simply made matters worse by allowing the equity cushion to continue to erode. Trident's reliance on its favorable state court judgment as providing adequate protection is misplaced. That judgment has been appealed by both sides and any attempt to determine the extent of Trident's ultimate recovery, if any, is pure speculation.

I find no basis on this record to disturb the decision of the Bankruptcy Court and

dent's equity cushion in the property was sufficient to provide the Bank with adequate protection under § 362(d)(1). *See e.g., In re High*

*Sky, Inc.,* 15 B.R. 332, 336 (Bkrtcy.M.D.Pa. 1981); *In re San Clemente Estates,* 5 B.R. 605, 610 (Bkrtcy.S.D.Cal.1980).

the order terminating the automatic stay as to the property located at 644 Germantown Pike will be affirmed.