**In the Matter of RITZ THEATRES, INC., Debtor(s).**

**Bankruptcy No. 86–4074.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 17, 1986.

As Amended Jan. 8, 1987.

Harley E. Riedel, Tampa, Fla., for debtor.

John D. Emmanuel, Tampa, Fla., for Gonzmarts.

Gregory E. Mierzwinski, Tampa, Fla., for Freedom Sav. & Loan Ass'n.

## ORDER ON MOTIONS FOR RELIEF FROM AUTOMATIC STAY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matters under consideration are two motions to obtain relief from the automatic stay imposed by § 362 of the Bankruptcy Code. One motion is filed by Cesar and Adela Gonzmart (Gonzmarts), who seek relief from the automatic stay in order to proceed in a non-bankruptcy forum and to complete an action to foreclose their mortgage liens on the properties known as W.T. Grant and Sanchez owned by Ritz Theatres, Inc. (Debtor). The action to foreclose the mortgage liens was filed by the Gonzmarts prior to the commencement of this Chapter 11 case. The other motion is filed by Freedom Savings and Loan Association (Freedom), who seeks relief from the automatic stay in order to commence a foreclosure action of its mortgage liens, a first mortgage encumbering the property known as the Ritz Theatre, and a second mortgage encumbering the W.T. Grant and the Sanchez properties owned by the Debtor.

The Gonzmarts' motion was filed on September 22, 1986. In due course, the Debtor filed its response to the motion. The response, which admitted substantially all the allegations set forth in the motion, asserted, however, that the Gonzmarts are adequately protected (sic), therefore, they are not entitled to any adequate protection, and, in turn, not entitled to obtain relief from the automatic stay.

The motion filed by the Gonzmarts was set for a preliminary hearing in due course, at the conclusion of which this Court on October 28, 1986 extended the automatic stay and scheduled a final evidentiary hearing.

On the same date the Gonzmarts filed a renewed motion and sought an ex parte order for relief from the automatic stay. This motion was based on the allegation by the Gonzmarts that at the preliminary hearing this Court ordered the Debtor to furnish to the Gonzmarts a proof of adequate insurance for the properties encumbered by their mortgage lien, and according to the Gonzmarts since they failed to do so, their collateral is in jeopardy, therefore the stay should be lifted for "cause." The motion was subsequently withdrawn by the Gonzmarts, and an order was entered denying same on November 7, 1986.

The motion seeking relief from the automatic stay by Freedom was filed on September 26, 1986. Freedom's motion sought relief from the automatic stay, first, pursuant to § 362(d)(1) for lack of adequate protection and, in the alternative, pursuant to § 362(d)(2) alleging lack of equity in the properties and that the property is not needed for effective reorganization. The response filed by the Debtor to Freedom's motion, in addition to challenging the motion on technical grounds, asserted as an affirmative defense that the Debtor has

equity in the subject properties, therefore Freedom is adequately protected, and for this reason, it is not entitled to adequate protection. In addition, the Debtor claims that the property is needed for reorganization. The two motions were considered by this Court at the final evidentiary hearing at which time the following facts have been established, either by stipulation or by testimony of witnesses:

## MOTION FOR RELIEF FROM AUTOMATIC STAY BY THE GONZMARTS

On April 8, 1985 the Gonzmarts acquired two promissory notes and mortgages from E.J. Boggs and Andrew J. Lubrano as Trustees of Like-Kind Exchange Trust. The notes were in the principal amount of $95,000 and $150,000 respectively and were executed by one E. Fred Edmister. The mortgages represented first mortgages on properties known as the Sanchez and the W.T. Grant properties located in the historical Ybor City section of Tampa adjacent to the Ritz Theatre. The properties were acquired by the Debtor subject to these mortgages by Mr. William E. Field (Field), the chief executive of the Debtor who also appears to be the owner of substantial if not all the outstanding stocks of the Debtor.

It is without serious dispute that the Debtor defaulted on the notes and, as noted earlier, the Gonzmarts commenced a foreclosure of their mortgage liens. However, before they were able to complete the foreclosure action the Debtor filed its Petition for Relief under Chapter 11. On the date of the final evidentiary hearing the first mortgage on the Sanchez property had an outstanding balance of $92,202.67 representing the principal and the accrued interest to the date of the hearing. It also appears that this mortgage accrues daily interest at the rate of $23.86 per day. The real estate taxes have not been paid on the Sanchez property for the tax years of 1983, 1984, and 1985. The amount of the delinquent taxes is not clear, and there is nothing in this record which would warrant either a specific finding as to the precise amount or the amount of taxes attributable to this particular property.

The current outstanding balance on the W.T. Grant mortgage is $145,584.46 representing principal and accrued interest to the date of the hearing. The obligation on this mortgage is increasing at a rate of $37.68 per day. The real property taxes are also delinquent on these properties and have not been paid for 1983, 1984, and 1985. Again, the amount of the delinquent taxes are uncertain.

The W.T. Grant property is vacant. The property known as the Sanchez property is currently occupied by a hobby shop. There is nothing in the record to show who occupies these premises or under what arrangements. Testimony in the record indicates that the Debtor receives $600.00 rent as monthly income from the Sanchez property.

## MOTION FOR RELIEF FROM AUTOMATIC STAY BY FREEDOM

On December 28, 1984 Mr. Field executed a note and mortgage in favor of Freedom. The current balance on this mortgage is $673,023.86 representing principal and interest which is accruing at the rate of $152.35 per day. This obligation is secured by a first mortgage on the Ritz Theatre property and a second mortgage on the W.T. Grant and Sanchez properties. This note and mortgage is also delinquent and, as noted earlier, the real estate taxes for 1983, 1984, and 1985 are also unpaid, albeit in an unspecified amount.

The current use of all these properties is negligible. The Ritz Theatre is occasionally rented for single entertainment events. While it has eight rentable apartments, there are only two apartments rented at this time. An affiliate of the Debtor also operates a cafe on the premises, but has not in the past paid any rent to the Debtor for the use of the premises.

## RIGHT OF THE MOVANTS FOR RELIEF

The total outstanding indebtedness against these properties in favor of the

Gonzmarts and Freedom is $910,810.00, out of which $92,202.07 and $145,584.46 respectively is owed to the Gonzmarts, and $673,023.86 is owed to Freedom. The Debtor admits, as it must, that these obligations are seriously delinquent, but asserts that the properties not only represent a substantial equity, but they are needed in the Debtor's plan to reorganize which includes a proposed development of a dinner theatre which, according to the Debtor, would form the center of the future development of the historical district of Ybor City. Of course, the Debtor's plan for this project is in less than an embryonic stage at this time, and the evidence presented in support of the validity of this proposition is, to say the least, questionable. Whether or not the Debtor will untimately be able to formulate this project into a viable economical undertaking remains to be seen, and at this time is not directly relevant to the motion of the Gonzmarts who only seek relief for lack of adequate protection, but it is relevant to the motion of Freedom, whose motion is based not only on the allegation of lack of equity but also on the claim that the properties are not needed for "effective" reorganization.

Thus, it is clear that the extent of the diminishment of the value of the secured claims of the Gonzmarts and Freedom represents an essential threshold issue relevant to both motions. A determination of the values of their secured claims would furnish the answer to the question which is, whether or not the Gonzmarts are entitled to adequate protection and if so, what type? This determination would also furnish half of the answer to the issue raised by the motion of Freedom. This is so because if this Court finds that there is no equity in the subject properties, the Court still must evaluate the viability of the Debtor's Plan of Reorganization. This is so because if the proposed Plan of the Debtor is nothing more than a pipe dream, the properties are not needed for an effective reorganization, therefore Freedom would be entitled to the relief it seeks pursuant to § 362(d)(2) of the Bankruptcy Code.

The experts presented by the movants and the Debtor are, as usual, in substantial disagreement as to the current value of the properties involved. The expert presented by the Debtor is not only a creditor of the Debtor, but has been in the past and may be even at the present time involved with the principal of the Debtor, Field, in property development. Thus, it is not totally without basis to infer that he may be involved in the proposed development of these properties, the very properties he appraised on behalf of the Debtor. Obviously, one may assume that his opinion on values is somewhat colored and tilted in favor of the position urged by the Debtor.

On the other hand, the expert of the movants had and has no involvement with the Debtor, therefore this Court is of the opinion that his testimony on values is more realistic and reliable. The stated respective values by this expert are as follows:

| | |
|---|---|
| Ritz Property | $560,000 |
| Sanchez Property | 98,000 |
| W.T. Grant Property | 235,000 |
| TOTAL VALUE | $893,000 |

As noted earlier, the encumbrances against the properties total $910,810.99, representing a shortfall of $17,810.99.

Considering the interest of the Gonzmarts, it appears that they are, at least at this time, slightly oversecured on the Sanchez property to the extent of approximately $6,000, and on the W.T. Grant property $90,000, for a total of $96,000. The total debt owed to Freedom on its first mortgage encumbering the Ritz Theatre and second mortgage on the Sanchez and W.T. Grant properties is $673,000. As noted, the value of the Ritz Theatre is $560,000. This represents a shortfall to Freedom on this property of $93,000.

■ The Debtor has no income of any consequence. As adequate protection, the Debtor offered to pay to the Gonzmarts $5,000 to be paid by January 31, 1987, but offered nothing at this time. These funds are supposed to be furnished by a prospective investor yet to be identified. This offer, as stated, is clearly not sufficient to protect the interest of the Gonzmarts, who at the minimum, should be paid interest on this obligation owed to them without delay

in order to assure that their equity in the Sanchez property does not erode by the increase of the indebtedness encumbering this property.

■ The interest of the Gonzmarts in the W.T. Grant property is a horse of a different color. It is without dispute that this property is worth at least $235,000, providing an equity cushion of at least $90,000. Thus, it appears that the interest of the Gonzmarts in this property is adequately protected, at least temporarily, by the Debtor's equity cushion.

■ As noted earlier, it has been determined that Freedom is undersecured. While authorities are not in agreement on the question of whether an undersecured creditor should be furnished adequate protection for "lost opportunity cost", see *American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984); *In re Briggs Transportation Co.,* 780 F.2d 1339 (8th Cir.1985); *In re Timbers of Inwood Forest Associates, Ltd.,* 793 F.2d 1380 (5th Cir. 1986), *reh'g granted en banc* (no reported decision to date); and *In re Certified Mortgage Corp.,* 25 B.R. 662 (Bankr.M.D.Fla. 1982), *rev'd District Court slip op.* (not generally reported), this Court is satisfied that the recent decision of the Fifth Circuit Court of Appeals in *Timbers of Inwood Forest Associates, Ltd., supra,* is better recognized and should be followed. In *Timbers, supra,* the court rejected *American Mariner, supra,* and held that an undersecured creditor is not entitled to adequate protection. Based on this premise, this Court is satisfied that Freedom's request for relief from stay pursuant to 362(d)(1) cannot be granted. This conclusion, however, does not furnish any solace to the Debtor concerning Freedom's motion based on § 362(d)(2). This is so because this Court is satisfied that in considering the motion under this Section, this Court must consider the total outstanding indebtedness owed to the party who seeks relief under this Section, see *Certified Mortgage, supra.*

■ As noted earlier, in the present instance the combined values of the three properties are $893,000 against a combined

indebtedness of $910,810.99. This being the case, the properties which are the sole assets of this Debtor cannot conceivably be needed for "effective" reorganization (emphasis supplied). Freedom, unlike the Gonzmarts, had no foreclosure action pending at the time this Chapter 11 case was commenced.

Having concluded that there is no equity in the properties on which Freedom has a first and a second mortgage respectively, and that all these properties have less value than the combined indebtedness encumbering them, they cannot be needed for an "effective" reorganization by utilizing the value of the properties. It is evident that the only way these properties could play a meaningful role in the Debtor's reorganization would be if they could be turned into an economically sound, radically different development, a proposition highly problematical at this time. In order to develop the concept advanced by the Debtor, the development of a dinner theater, there will have to be at least an infusion of three or maybe close to four million dollars, none of which is in sight.

Moreover, there is nothing in this record to warrant the conclusion that the Debtor would be in a position to secure these funds in the near future. Furthermore, even if the Debtor is able to secure the funds, there is no possible way the Debtor would be able to service this debt in addition to servicing the Gonzmart and Freedom mortgages. Neither Freedom or the Gonzmarts have expressed any desire to subordinate their interest to any possible lender who might furnish the funds necessary for the development.

In sum, this record leaves no doubt that these properties cannot be needed for an effective reorganization under the plans advanced by the Debtor. This being the case, Freedom is entitled to be relieved from the automatic stay, at least to the extent of permitting Freedom to commence a foreclosure action against the Ritz Theatre property and proceed at least to the point of seeking and obtaining a summary final judgment with the proviso that a foreclosure sale shall not be scheduled without obtaining further relief from this Court.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the motion for relief from stay filed by the Gonzmarts be, and the same is hereby, denied without prejudice provided that the Debtor pay to the Gonzmarts the sum of $2,500 within 7 days of the date of this order, another $2,500 by January 15, 1987, and another $2,500 by February 18, 1987. In the event the Debtor fails to make these payments to the Gonzmarts, the Court will consider, upon a properly filed motion and affidavit, the entry of a final order lifting the stay. It is further

ORDERED, ADJUDGED AND DE-CREED that the motion for relief from stay filed by Freedom be, and the same is hereby granted, and Freedom is permitted to commence a foreclosure action, provided, however, that no foreclosure sale shall be scheduled without further order of this Court.