**In re HELIONETICS, INC., Debtor.**

**DOWNEY SAVINGS & LOAN ASSOCIATION, Movant,**

v.

**HELIONETICS, INC., Respondent.**

**Bankruptcy No. SA 86–04180 JR.
Ref. No. M7–0022 JR.**

United States Bankruptcy Court, C.D. California.

Feb. 23, 1987.

David A. Gill and John J. Bingham, Jr. of Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for debtor and debtor-in-possession.

Lawrence A. Diamant and Elliott Lisnek, Robinson, Wolas & Diamant, Los Angeles, Cal., for Downey Savings & Loan Association.

Suzanne E. Marklin, Office of the U.S. Trustee, Santa Ana, Cal., appearing on behalf of the United States Trustee.

### MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

This motion was brought by Downey Savings & Loan Association ("Downey") for relief from the automatic stay or in the alternative adequate protection. I heard the matter on February 4, 1987. As discussed below, I denied Downey's motion.

### STATEMENT OF FACTS

Debtor is a publicly traded corporation which designs, manufactures and markets electronic power conditioning systems for commercial and military application through its DECC Division ("DECC"). It also conducts other businesses through various subsidiaries. For example, it has a 55% interest in HLX Laser, Inc. ("Laser") which developes, constructs and markets eximer lasers and related equipment primarily for military application. Debtor is the sole owner of HLX Electro-Optical Systems, Inc. ("EOS") which designs and manufactures electro-optical systems for use with eximer lasers. Debtor owns 65% of Marinco-HLX, Inc. ("Marinco-HLX") which, in turn, owns Marinco Computer Products, Inc. ("Marinco"), a producer of special pur-

pose computer devices known as relay processes and related software, and Squire-Whitehouse Corp. ("Squire"), a maker of down hole logging instruments primarily for the petroleum industry. Vard Newport Corp. ("Vard") is a wholly-owned subsidiary of debtor and manufactures precision mechanical components and subsystems for aerospace and related industries. I will refer to these entities as the "Subsidiaries". As is evident from the foregoing description, debtor and the Subsidiaries provide important products and services to the United States Government and aerospace and high technology industries.

Debtor filed its voluntary petition under Chapter 11 on July 31, 1986. The principal secured creditors of debtor are Bank of America ("Bank") and Downey. To secure a $10.0 million line of credit, debtor granted Bank a security interest in substantially all its assets, including its ownership interests in the Subsidiaries (the "Interests"), and certain assets in the Subsidiaries (collectively, the "Bank Collateral"). Subsequent to the Bank loan, debtor guaranteed a $5.0 million loan from Downey to debtor's Employees' Stock Ownership Plan ("ESOP"). To secure the guarantee, debtor granted Downey a junior security interest in substantially all its assets, excluding the Interests and specific assets of the Subsidiaries (the "Downey Collateral"). Debtor has reserved its right to dispute the enforceability of the Downey guarantee and security agreement. In August 1984, Downey and Bank entered into an agreement entitled "Inter-Creditor Agreement". In June 1985, Bank advanced debtor an additional $1,500,000 and Downey subordinated its interest in debtor's assets in the amount of this advance.

Under the Inter-Creditor Agreement, Downey claims an interest in all the Bank Collateral. Bank opposes this interpretation. Notwithstanding this disagreement, the Inter-Creditor Agreement provides for the first $1.5 million in proceeds from debtor's assets to be distributed to Bank and the balance to be split prorata between Bank and Downey. Downey should receive one dollar of every three dollars in proceeds from the split.

At present, debtor's obligations to Bank and Downey are approximately $13 million and $4.9 million, respectively. Additional priority creditors include the Bank of the West ("West") and John Hancock Mutual Life Insurance Company ("Hancock"). West and Hancock hold deeds of trust on certain real property of Vard securing a debt of approximately $4.3 million. Downey claims that the United States Government has a priority claim for approximately $2.0 million.

In its motion, Downey argues that its interests are not adequately protected because the total liens against debtor's assets equal approximately $24.2 million and the aggregate value of these assets is approximately $23.6 million. Accordingly, debtor has no equity in its assets and Downey, as the junior secured creditor, is undersecured. In addition, Downey claims that interest on its debt accrues at a rate of approximately $40,000 per month. Because of this, Downey claims its position continues to deteriorate requiring immediate intervention in the form of adequate protection. To support its contention that the value of debtor's assets including the Interests equals $23.6 million, Downey had Joseph Vinso, Ph.D., perform a valuation. In his declaration, Dr. Vinso summarizes his findings on valuation as follows:

Based on the procedures previously described, although different weightings may be done for individual subsidiaries, the estimated values of the subsidiaries, assuming the restructuring of the firm as defined by Dr. Bibeault, are as follows:

| | |
|---|---|
| Laser | $ 5.89 million |
| EOS | 1.76 million |
| Vard Newport | 6.67 million |
| DECC | 6.83 million |
| Marinco | .40 million |
| SWC (Squire Whitehouse) | .68 million |
| Other | 1.37 million |
| TOTAL | $23.60 million |

In its opposition to Downey's motion, debtor argues that Downey's going concern valuation is irrelevant because liqui-

dation value is the appropriate valuation standard. Debtor attacks Dr. Vinso's valuation because it was substantially based upon the Bibeault report. The Bibeault report was prepared by Donald B. Bibeault, Ph.D., a consultant for debtor and was entitled "Helionetics, Inc., Viability Analyses and Workout Plan". Dr. Vinso also relied on various back-up data and financial information prepared by Dr. Bibeault. Debtor further contends that Downey is not entitled to relief because (1) there is excess equity of $1.2 million; (2) Downey failed to meet its initial burden of establishing a prima facie case for relief because it did not prove the value of its interest in debtor's assets; (3) Downey's interest in debtor's property is not decreasing in value or otherwise deteriorating; and (4) Downey has no interest in debtor's property since the liquidation value of debtor's property in which Downey has a perfected security interest is approximately $1.25 million and it is admitted by Downey and previously determined by this court that Bank is entitled to the first $1.5 million recovered from debtor's assets.

Debtor submits the declaration of Mr. Stanley Emeterio, its Chief Financial Officer, to establish that the liquidation value of the debtor's assets including the Interests is approximately $1.25 million. In his declaration, Mr. Emeterio allocates no value to the Interests. To justify this, he states that the Subsidiaries are insolvent on an asset to liability basis assuming Bank's claims against the Subsidiaries are upheld and assuming debtor's inter-company creditor claims are enforceable with those of other unsecured creditors.

In Downey's reply to debtor's opposition, Downey reaffirms its position that debtor should be valued as an ongoing concern and not on a liquidation basis. Downey disagrees with debtor's contention that *In re American Mariner Industries*, 734 F.2d 426 (9th Cir.1984), established a liquidation value standard. Downey further asserts that the marshaling doctrine in California protects its interest in debtor's assets and requires Bank to act accordingly. Downey also claims that its interests in debtor's

property can be adequately protected by the payment of $41,572.69 per month.

## DISCUSSION

■ I have to deal with some preliminary matters before discussing the core issues in this contested matter. At the outset of the hearing, debtor moved for nonsuit based on Rule 41(b) of the Federal Rules of Civil Procedure because Downey failed to (1) name indispensable parties and (2) establish a prima facie interest in secured assets of debtor, claim for adequate protection, or basis for loss opportunity costs. Downey filed copies of the term loan documents between Downey and the ESOP as borrower and debtor as guarantor including the loan agreement, promissory note, security agreement and financing statement (the "ESOP Loan Documents"). It also submitted the Inter-Creditor Agreement between Downey and Bank which was acknowledged and agreed to by debtor. In light of this, Downey established its prima facie interest in debtor's assets through the ESOP Loan Documents and to proceeds from the Bank Collateral through the Inter-Creditor Agreement. Downey also established a prima facie claim for adequate protection based on the alleged deficiency between the aggregrate amount of secured claims and going concern value of debtor's assets. With respect to lost opportunity costs, Downey rightfully responded that it did not need to ask specifically for lost opportunity costs because according to *American Mariner, supra,* this court has the discretion and flexibility to design adequate protection remedies. Furthermore, the Federal pleading requirements are to be liberally construed to do substantial justice. *Lynn v. Sheet Metal Workers' Intern. Ass'n,* 804 F.2d 1472 (9th Cir.1986). Accordingly, I denied debtor's motion under Rule 41(b).

■ Debtor next moved to strike the declaration of Dr. Vinso pursuant to Rules 403, 703 and 402 of the Federal Rules of Evidence. Debtor argued that the declaration of Dr. Vinso lacked probative value

and should be excluded pursuant to Rule 403. Debtor attacked Dr. Vinso's valuation as a rehash of the Bibeault report which is not in evidence. Downey responded that the declaration of Dr. Vinso describes in detail his reliance on various data besides the Bibeault report to form his independent view regarding debtor's going concern value. I believed this to be true and, accordingly, found Dr. Vinso's declaration to have probative value. For the same reasons, I denied debtor's motion under Rule 703 that Dr. Vinso's opinion was not based on information normally relied on by experts making this kind of valuation. With respect to debtor's Rule 402 objection, I found Dr. Vinso's valuation relevant to the proceeding because to value debtor's assets the going concern value of debtor is critical. I will discuss my reasons for this view at length below. Suffice it to say for now that going concern value is relevant to my decision. As for debtor's assertion that Dr. Vinso should have placed into evidence his back-up data, I don't think this was necessary. If Debtor had questions regarding this back-up information, it could have deposed Dr. Vinso to discredit the basis for his opinion rather than speculate on the independence and validity of his valuation. However, Debtor choose not to do this.

■ Having disposed of these preliminary matters, I next turn to the core issues in this motion. Downey describes the issues before me as valuation and the impact of the marshaling doctrine under California law. I will first deal with the marshaling issue. Debtor contends that marshaling is irrelevant because in considering whether a secured creditor is adequately protected, the court should look strictly at creditor's security interest and anything else is superfluous. I do not need to decide this controversy except to state that the Inter-Creditor Agreement eliminates marshaling as an issue. The Inter-Creditor Agreement deals with the assets which might have been the subject of a marshaling claim and allocates the proceeds from these assets to Bank and Downey.

■ With regard to the valuation issue, Downey cites *In re Philadelphia Consumer Discount Co.*, 37 B.R. 946, 949 (E.D. Penn.1984); *Matter of Bouquet Investments*, 32 B.R. 988 (Bankr.C.D.Cal.1983); *Matter of QPL Components, Inc.*, 20 B.R. 342 (Bankr.E.D.N.Y.1982) for the proposition that going concern rather than liquidation value is appropriate in an adequate protection proceeding under § 362(d)(1). Debtor responds that *American Mariner, supra,* mandates liquidation value.

Before going any further, I think it is important to analyze the motives of debtor and Downey on this valuation issue. This situation is somewhat unique because normally the debtor is arguing for a higher valuation. Here we have the reverse. Why? If I use debtor's liquidation value of $1,254,000, Downey has no allowed secured claim because Bank gets the first $1,500,-000 in proceeds under the Inter-Creditor Agreement. If I use Downey's going concern value, debtor risks a determination that Downey is undersecured and deserves some form of adequate protection. This tactical battle over valuation is being fought vigorously because the outcome of this motion is at stake.

Downey seeks relief from the automatic stay under § 362(d)(1) of the Bankruptcy Code which provides in part that

On request of a party in interest ... the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

Section 361 of the Bankruptcy Code specifies three nonexclusive methods of providing adequate protection. They are (1) periodic cash payments to offset any decrease in the value of the creditor's interest; (2) additional or replacement liens on debtor's property; and (3) such other relief resulting in the "indubitable equivalent" of the creditor's interest. See *American Mariner, supra* at 430. The general intention of § 361 is to protect a broad range of secured creditor interests. *Id.* As the

court in *American Mariner* stated, "We conclude that sections 361 and 362(d) were drafted ... to insure that the secured creditor receives the benefit of its bargain." *Id.* at 435. With this background in mind, I will now take a closer look at this valuation issue.

 Congress rejected the view that adequate protection be measured solely by the liquidation value as of the petition date in favor of the more flexible case by case approach.

> The section does not specify how value is to be determined nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development.... It is expected that the courts will apply the concept in light of facts of each case and general equitable principles.

H.R.Rep. No. 595 at 339, 1978 U.S. Code Cong. & Ad. News at 5787, 6295; see also *In re American Mariner Industries, Inc.*, *supra* at 431; *Matter of QPL Components, Inc.*, *supra* at 344. Debtor argues that *American Mariner*, requires the use of liquidation value. In *American Mariner*, value was not an issue. The debtor and creditor stipulated to the value of the collateral. The creditor claimed that it was entitled to adequate protection under § 362(d)(1) in the form of monthly payments equal to its prospective return from reinvestment of the liquidation value of the collateral. In finding that a secured creditor deserves the benefit of his bargain, the Ninth Circuit Court of Appeals held that the creditor should be compensated for the delay in enforcing its rights during the period between filing of the petition and confirmation of the plan. Although the creditor contended that the form of compensation should be monthly interest payments at the market rate on the liquidation value of the collateral, the court stated that "this is one method of providing adequate protection but by no means the only method available to debtor". *Supra* at 435. The court further stated that "[t]he debtor should be permitted maximum flexibility in structuring a proposal for adequate protec-

tion." *Id.* In my view, *American Mariner* does not stand for the proposition that I must use liquidation value for purposes of § 362(d)(1). To the contrary, it specifically promotes flexibility and court discretion in this area.

The cases cited by Downey deal generally with piecemeal valuation of specific assets of a debtor rather than the debtor as an entity. For example, in *In re Automatic Voting Mach. Corp.*, 26 B.R. 970, 972 (Bankr.W.D.N.Y.1983), the secured creditor had an interest in the debtor's equipment. The court stated that "[t]he appropriate method of valuation to gauge whether the objecting party is adequately protected in a reorganization case is 'going concern' or fair market value." In the *QPL Components* case, the collateral was inventory and proceeds of inventory. The court stated that "The value to be accorded collateral which is inventory of an ongoing Chapter 11 debtor, with reasonable prospects that it can continue, is the dollar value realizable from its disposition in the ordinary course of business. [Citations omitted]". 20 B.R. at 344. These cases do indicate that where a reorganization is in process and there is every reason to believe that it will be successful, assets of the debtor should be valued on a going concern basis. This should come as no surprise because commercial reasonableness dictates this outcome especially where the whole is worth more than the pieces. *Matter of Bouquet Investments*, 32 B.R. 988, 990 (Bankr.C.D.Cal. 1983). There may be unusual circumstances which would cause a different conclusion but this case does not fall into that category.

In approaching this issue, I must first determine what interest Downey has in debtor's assets. Downey is owed approximately $4.9 million. It has a direct security interest in assets of debtor other than the Interests. It also participates in the Bank Collateral through the Inter-Creditor Agreement. Although there may be some disagreement between Bank and Downey over this point, that controversy is not before me. Accordingly, for purposes of this

proceeding, I assume Downey has the right to receive a distribution of proceeds from the Bank Collateral as specified in the Inter-Creditor Agreement. I think it also fair to assume that Bank and Downey will see that the value of the Bank Collateral is maximized in a commercially reasonable manner. In my view this means Bank and Downey would sell the Bank Collateral as a going concern.

The history of this case and the proceedings before this court indicate that there is every reason to believe that debtor will succeed in this Chapter 11 reorganization. Just recently, I continued debtor's use of cash collateral, which is part of the security held by Bank and Downey, through July 20, 1987. I did this because the evidence showed that debtor had exceeded its operating projections previously given to the court at the initial hearing on cash collateral in September 1986 and indicated that it would likely exceed its operating projections during the first and second quarters of 1987.

Downey has not provided me with any evidence that its interest in the assets of debtor is deteriorating or depreciating in value. To debtor's credit, a contrary scenario is evident. Furthermore, Downey has given me no cause to believe that debtor will not succeed in its reorganization effort. What is absolutely clear to me is that everybody is better off, Downey included, if debtor can continue to operate as a going concern and reorganize to maximize those intrinsic values which make the whole worth more than the pieces. Accordingly, where there is a successful Chapter 11 case in progress, going concern value is more appropriate than liquidation value and better reflects the reality of the situation. Since the only evidence of going concern value before me is Dr. Vinso's valuation, I find that the going concern value of debtor, including the Interests, is $23.6 million. Furthermore, since Downey has an interest in the Bank Collateral through the Inter-Creditor Agreement, the total amount of this value is available to determine if Downey is adequately protected.

 Debtor has not made an offer of adequate protection. Therefore, adequate protection must rest on the interest which Downey has in the assets of debtor. In other words, is there a sufficient "equity cushion" to protect Downey's interest? An equity cushion is a recognized and accepted form of adequate protection. *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984); *In re Automtic Voting Machine Corporation*, *supra* at 972. As the court stated in *Mellor*,

> Although the existence of an equity cushion as a method of adequate protection is not specifically mentioned in § 361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Curtis*, 9 B.R. [110] at 112. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection. [Citations omitted]." *Supra* at 1400.

 To determine if there is an equity cushion and its adequacy, I did a simple mathematical calculation. I deducted from $23.6 million the priority security interests of West Bank and Hancock aggregating $4.3 million and the priority payment of $1.5 million to Bank. This left $17.8 million to be allocated between Downey and Bank under the Inter-Creditor Agreement. Downey's share of this amount is approximately $5.9 million. Since debtor's obligation to Downey is $4.9 million, this leaves Downey with an equity cushion of approximately $1.0 million. This is 20.4% of the debt which I believe adequately protects Downey. See, *In re Mellor*, *supra* at 1401.

 Downey argues that I should deduct an additional $2.0 million from the going concern value because the United States Government has a claim in this amount for prepayments to debtor on certain government contracts. Downey cites *In re American Pouch*, 769 F.2d 1190 (7th Cir.1985), for this proposition. Based on *American Pouch*, the United States Government has a priority claim to assets acquired as a result of prepayments on government contracts if the contracting en-

tity defaults on the contract. Since the expectation is that debtor will continue in business and this is the basis for a going concern valuation, this is a contingent claim and does not pose sufficient risk to Downey's interest to set off against Downey's equity cushion. Downey further contends that a purchaser of debtor's assets would deduct the $2.0 million from the going concern value. There is nothing in Dr. Vinso's report to support this view. From a practical standpoint, value is added to the assets acquired with the prepayments so additional value should accrue to debtor's assets. Therefore, I do not think a reduction in the going concern value is appropriate.

In summary, Downey is adequately protected by the equity cushion it has through its interest in debtor's assets. There is no evidence debtor's assets are deteriorating or depreciating so the value of Downey's interest is stable. However, should circumstances change, Downey is not precluded from bringing another motion for relief from the automatic stay.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum opinion shall constitute my findings of fact and conclusions of law.