**In re Leslie J. McKILLIPS and Patricia McKillips, Debtors.**

**Bankruptcy No. 87 B 31280.**

United States Bankruptcy Court, N.D. Illinois, W.D.

Dec. 4, 1987.

Wesley E. Lindberg, Rockford, Ill., and William Rentz, Beloit, Wis., Jo–Ann Saladino, South Beloit, Ill., for plaintiffs-petitioners.

Kenneth F. Ritz, Rockford, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the Motions of Home Federal Savings and Loan Association of Rockford (Home Federal), the M & I Bank (M & I) and the First National Bank and Trust Company of Beloit (First National) for Relief from Automatic Stay or Adequate Protection. The Debtors are represented by Attorney Kenneth F. Ritz. Home Federal is represented by Attorney Wesley C. Lindberg. M & I is represented by Attorney William W. Rentz. First National is represented by Attorney Jo–Ann Saladino.

This Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Debtors filed for relief under Chapter 13 of the Code on November 24, 1986. That case was dismissed upon the Debtors' own Motion on December 12, 1986. The Debtors then filed for relief under Chapter 12 of the Code on December 12, 1986. The Chapter 12 case was dismissed on April 27, 1987, after this Court held that the Debtors were not eligible as family farmers. The dismissal of the Chapter 12 was appealed. During the appeal, the Order Staying the Dismissal Pending Appeal lapsed. The Debtors then filed the present case under Chapter 11 of the Code on September 4, 1987. The dismissal of the Chapter 12 case was vacated on October 1, 1987, and the case was remanded for further proceedings. The creditors moved to have the Chapter 12 case dismissed because of the pending Chapter 11. That Motion was granted on October 28, 1987. An appeal of that ruling is now pending.

Home Federal, M & I and First National are secured creditors of the Debtors. Home Federal holds a mortgage in the Debtors' real estate. M & I holds a second mortgage in the Debtors' real estate and a security interest in certain pieces of equipment and machinery. First National holds a security interest in an automobile and a horse trailer.

For purposes of this hearing, the parties have agreed to value the Debtors' real estate at $240,000. The Debtors, however, dispute the amount of Home Federal's debt.

In September of 1986, Home Federal foreclosed on its mortgage. A Judgment of Foreclosure was entered in the amount of $183,557. In preparing for the foreclosure and sale, Home Federal incurred expenses of $4,082.50. The Debtors filed for relief under Chapter 13 of the Code before the sale was held. Since that time, interest has continued to accrue and Home Federal has incurred expenses in the form of attorney's fees. The real estate taxes for 1986 have not been paid and the 1987 taxes are accruing.

The Debtors maintain that, since a judgment of foreclosure has been entered, interest accrues at the judgment rate of interest. The Debtors also argue that since the mortgage has merged with the judgment, the only authority to include attorney's fees lies in state law. Ill.Rev.Stat. ch. 110, Section 15–111. The Debtors argue further that because the Debtors have filed bankruptcy, Section 506(b) of the Code pre-empts state law. Section 506(b) provides that attorneys' fees and costs are added to an over-secured claim when the agreement, under which the claim arose, so provides. Therefore, since there is no longer an agreement (it has merged with the judgment), attorney's fees and costs are not includable.

Home Federal argues that attorney's fees and costs during the pendency of the bankruptcy accrue through operation of state law. The rate of interest that ac-

crues is the contract rate, or, in the alternative, 10%, which represents the rate of interest allowed between the time of the judgment of foreclosure and the time of final judgment.

Section 506(b) of the Code provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. Section 506(b).

Generally, Section 506(b) allows the addition of interest to an over-secured creditor's claim. *In re Fawcett*, 758 F.2d 588 (11th Cir.1985). Attorney's fees and other costs are allowable if the agreement which provides the basis of the claim so provides. *In re K.H. Stephenson Supply Co.*, 768 F.2d 580 (4th Cir.1985). The present case is complicated by the fact that the mortgage held by Home Federal has been foreclosed and a judgment of foreclosure entered. Whether a judgment of foreclosure merges the mortgage into the judgment shall be dispositive of what interest rate applies and whether attorney's fees and other costs are includable.

Under Illinois law [1], a judgment of foreclosure merges the mortgage with the judgment. *First Financial Savings and Loan v. Winkler*, 29 B.R. 771 (N.D.Ill. 1983); *In re Young*, 22 B.R. 620 (Bankr.N. D.Ill.1982). The only case which addresses the issue of whether, for purpose of Section 506(b), the doctrine of merger applies is *In re Schlecht*, 36 B.R. 236 (Bankr.D. Alaska 1983). In *Schlecht*, the court first looked to the Congressional history of Section 506(b) and concluded that Section 506 is to be governed by Federal, not state law. The court further concluded that the doctrine of merger is applicable federal law.

The court found that the note, which the creditor had sued upon, merged into the judgment so that there was no longer an agreement which provided for the addition of attorney's fees.

■ This Court agrees with *Schlecht*, at least to the extent that the award of attorney's fees to an over-secured creditor should be determined by Federal law and not be limited by application of state law. The Court does have difficulty in accepting the proposition that once a creditor has foreclosed on a mortgage, he is no longer entitled to costs he would have been entitled to had the debtor filed bankruptcy prior to foreclosure.

Clearly, the Code and the legislative history do not address the matter. It is equally apparent that Congress intended an over-secured creditor to receive attorney's fees and costs if he bargained for them. Additionally, recognizing merger for purposes of Section 506(b) would encourage a debtor to allow the creditor to waste time and money to foreclose on the mortgage.

On the other hand, to hold otherwise would be to invite the courts to open up valid state court judgments for a myriad of other reasons; something that this Court is very reluctant to do.

■ On balance, this Court is of the opinion that once a creditor has taken his case to judgment, the judgment should stand. It follows that the creditor should enjoy all of the benefits and suffer the consequences of the action. The Court finds that an over-secured creditor may not add attorney's fees and costs pursuant to Section 506(b) once merger has taken place.

■ Home Federal argues that merger has not yet taken place because, in Illinois, a judgment of foreclosure is not a final judgment. A foreclosure judgment does not become final until the report of sale is confirmed.

---

1. Home Federal has cited a number of provisions from the new Illinois Foreclosure Law, P.A. 84–1462, Section 2, effective date July 1, 1987. Section 15–1106(a), ch. 110, states that the new law applies to foreclosures instituted after July 1, 1987. The sections cited have no applicability to the case at bar since the foreclosure took place before the effective date of the Act.

Generally, the Illinois courts agree that a judgment of foreclosure is not a final, appealable judgment. *King City Federal Savings and Loan Assoc. v. Ison*, 80 Ill. App.3d 900, 36 Ill.Dec. 142, 400 N.E.2d 562 (5th Dist.1980); *Harlem Savings Assoc. v. Lesniak*, 91 Ill.App.2d 194, 234 N.E.2d 160 (1st Dist.1968); *But see, Fairfield Savings and Loan Ass'n v. Central Nat. Bank in Chicago*, 19 Ill.App.2d 465, 154 N.E.2d 333 (1st Dist.1958). The state court retains jurisdiction in order to add any additional costs authorized by statute and confirm the sale. Despite this procedure, this Court finds that merger occurs when the judgment of foreclosure is entered, not upon confirmation of the foreclosure sale.

The reasoning behind finding that a judgment of foreclosure is not a final judgment is to prevent multiple appeals from the foreclosure action. Once the sale is confirmed and any deficiency determined, a party may appeal any aspect of the foreclosure proceeding. However, the issues that may be brought to the attention of the court at the hearing on confirmation of sale are limited to issues arising from the sale of the property. Parties may not relitigate or introduce new issues not related to the sale at the hearing to confirm the sale. Therefore, although additional proceedings may be needed after a judgment of foreclosure has been entered, the rights of the parties under the mortgage have been, pending appeal, adjudicated. This is, in essence, the definition of the doctrine of merger. In this case, the Court finds that merger has taken place so that Home Federal may not add attorney's fees and costs incurred after the Debtors' first petition in bankruptcy was filed.

█ Based on the foregoing discussion, the Court finds that the interest rate to be applied, since October 1, 1986, is 9%, the judgment rate of interest. Illinois law applicable at the time of the foreclosure in this case [2] provides that interest on an unsatisfied judgment accrues at 9% per annum. Ill.Rev.Stats. ch. 110, Sections 2–1303 and 15–111 (1985). Pending any additional costs incurred in selling the property, the amount of a judgment of foreclosure is fixed when the judgment is entered. In this case, that was October 1, 1986. See, *In re Schnupp*, 64 B.R. 763 (Bankr.N.D.Ill. 1986).

Home Federal argues that an interest rate of 10% applies, but cites no authority. In Illinois, a debtor who wishes to redeem property must pay the sale price of the property and interest at the rate of 10%, calculated from the time of sale. Ill.Rev. Stat. ch. 110, Sections 12–122 and 12–128. In this case, the Debtors are not redeeming property sold at a sheriff's sale. They are satisfying a judgment. The applicable interest rate is 9%.

The Court finds that the debt owed to Home Federal is approximately $202,885. However, any equity cushion that exists must be reduced by delinquent taxes. The real estate taxes for 1986, in the amount of $3,027.60, have not been paid. The real estate taxes for 1987 are accruing, the Court assumes, at the same rate. The equity cushion enjoyed by Home Federal is approximately $35,000.

The Debtors argue that the equity cushion adequately protects Home Federal's claim. Home Federal argues that a cushion of 14.5% is inadequate.

The purpose behind the automatic stay is to preserve the *status quo* and give the debtor a breathing spell to get his economic house in order. *In re Coors of the Cumberland, Inc.*, 19 B.R. 313 (Bankr.M.D. Tenn.1982); *LaJolla Mortgage Fund v. Rancho El Cajon Assoc.*, 18 B.R. 283 (Bankr.S.D.Ca.1982). As a countervailing policy, Section 361 of the Code was included to protect the interests of secured creditors during the pendency of bankruptcy. *In re Timbers of Inwood Forest Assoc., Ltd.*, 793 F.2d 1380 (5th Cir.1986), on rehearing, 808 F.2d 363 (1987), cert. gr., —— U.S. ——, 107 S.Ct. 2459, 95 L.Ed.2d 868 (1987); *In re Briggs Transportation Co.*, 780 F.2d 1339 (8th Cir.1985); *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984).

**2.** See footnote No. 1, supra.

Case law has established that the existence of an equity cushion may, in and of itself, constitute adequate protection for an over-secured creditor. *In re Mellor*, 734 F.2d 1396 (9th Cir.1984); *In re Ritz Theatres, Inc.*, 68 B.R. 256 (Bankr.M.D.Fla. 1987). Whether an equity cushion does constitute adequate protection is determined on a case-by-case basis. *In re Tucker*, 5 B.R. 180 (Bankr.S.D.N.Y.1980).

Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection. *In re San Clemente Estates*, 5 B.R. 605 (Bankr.S.D. Ca.1980) (65% is adequate); *In re Nashua Trust Co.*, 73 B.R. 423 (Bankr.D.N.J.1987) (50% is adequate); *In re Ritz Theatres, supra.* (38% is adequate); *In re Dunes Casino Hotel*, 69 B.R. 784 (Bankr.D.N.J. 1986) (30% is adequate); *In re Helionetics*, 70 B.R. 433 (Bankr.C.D.Ca.1987) (20.4% is adequate); and, *In re Mellor, supra*, (20% is adequate); *But see, In re Lee*, 11 B.R. 84 (Bankr.E.D.Pa.1981) (41% requires payment of current interest). Case law has almost as uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection. *Ukrainian Savings and Loan Assoc. v. The Trident Corp.*, 22 B.R. 491 (E.D.Pa.1982) (10% is inadequate); *In re McGowan*, 6 B.R. 241 (Bankr.E.D.Pa.1980) (10% is inadequate); *In re Liona Corp., N.V.*, 68 B.R. 761 (Bankr.E.D.Pa.1987) (8.9% inadequate); *In re Jug End in the Berkshires, Inc.*, 46 B.R. 892 (Bankr.D.Mass.1985) (8.6% insufficient); *In re Castle Ranch of Ramona, Inc.*, 3 B.R. 45 (Bankr.S.D.Ca.1980) (8.6% is insufficient); and, *In re LeMay*, 18 B.R. 659 (Bankr.D.Mass.1982) (7% is inadequate); *But see, In re Carson*, 34 B.R. 502 (D.Ka.1983) (11% is adequate). Case law is divided on whether a cushion of 12% to 20% constitutes adequate protection. *In re Shaller*, 27 B.R. 959 (W.D.Wisc. 1983) (17% to 18% is insufficient); *In re Hawaiian Pacific Industries*, 17 B.R. 670 (Bankr.D.Ha.1982) (15% is adequate); *In re Rodgers Development Corp.*, 2 B.R. 679 (Bankr.E.D.Va.1980) (17% is adequate); *In re Pitts*, 2 B.R. 476 (Bankr.C.D.Ca.1979) (15% is adequate).

In *Rodgers Development* the court determined the property securing the creditor's debt to be worth $750,000 and an equity cushion of $130,000. The court also noted that both expert witnesses who testified were of the opinion that the property would increase in value over time. In *Pitts*, the second mortgage holder's cushion was $19,-125 on a $125,000 parcel of property. Although interest was accruing at $1,000 per month, the debtor was making the current payments on the first mortgage, thus creating more equity for the second mortgage holder. The court noted that the cushion was minimal, fragile and precarious. *See In re Helionetics*, supra., in which the court noted that the debtor's performance was exceeding all projections, indicating that creditors would eventually receive full payment. *See also, In re Carson*, in which the court noted that, although the cushion was eroding, the debtors were soon going to turn over $60,000, which represented proceeds from the sale of some of the collateral, to the secured creditor.

█ When a creditor is sufficiently over-secured, it is easy to minimize the effects that time and the unforeseen may have on the collateral. However, when the creditor's cushion is slim the court must be more concerned about what the future may hold. In this case, Home Federal's cushion is approximately 14.5% to 16.5%. Interest is accruing at $1,360 per month and real estate taxes are not being paid. The Debtors have been in bankruptcy, of one form or another, for over a year. Yet, they have been operating hand to mouth for the entire time, without making payments to secured creditors. While all parties agree that the property is worth $240,000, there is no evidence regarding the stability of this property value. In some cases, a 15% cushion may constitute adequate protection. This is not one of them. The Debtors rely solely on the cushion while all evidence presented indicates that the cushion is doing nothing but eroding. The Debtors should pay accruing interest to maintain the cushion.

Even if Home Federal were adequately protected, M & I is not. In holding a

second mortgage, M & I has a secured claim in the real property of $35,000 plus interest in some equipment. The only evidence produced valued the equipment at $10,000. The Court so finds.

■ Even an under-secured creditor is entitled to have the secured portion of his debt protected. *In re Timbers.* As interest accrues on the debt of Home Federal, the security upon which M & I can rely is diminished. In fact, it is diminished in exactly the same amount as Home Federal's claim is increased. This assumes no depreciation. The manner in which M & I's claim should be protected is through current interest payments to Home Federal.

It also appears, from the evidence, that M & I's other collateral, machinery and equipment, is falling into disrepair by the passage of time and use by the Debtors. The Debtors have offered payments of 5% of M & I's total claim as adequate protection.

The Court finds that if payments are made to both Home Federal and M & I, as described above, M & I would be adequately protected.

■ First National also requests relief from the stay. First National's debt is secured by an automobile and a horse trailer. First National made an offer of proof which values the automobile at $5,500 and the trailer at $9,000. The Debtor opined that the automobile is worth $4,000 and the trailer $3,500, although he admitted that he paid $9,000 for it a year ago. Based on the evidence presented, the Court finds the value of the automobile to be $4,000 and the trailer to be $8,000 for a total of $12,000. Because the collateral is depreciating through wear and tear, the Debtors should make payments of 10% per year to adequately protect First National.

To provide adequate protection, the Debtors have offered 5% payments to M & I. The Debtors have offered no payments to Home Federal, relying solely on an equity cushion. The Court has found that a payment of 5% to M & I would not adequately protect any of the creditors. The normal result would be to relieve the creditors from operation of the stay. The Court's view of its *raison d'etre* does not include fashioning adequate protection orders. Instead, the Court *should* limit itself to determining whether the Debtors' proposal constitutes adequate protection. If it does not, either the stay should be vacated or the Debtors should be given leave to offer an upgraded proposal.

Nevertheless, given the jaded bankruptcy history of the Debtors here, the Court departs from its traditional role. Thus far the Debtors have been debtors in Chapters 13, 12 and now 11. The principal creditor, Home Federal, has been unusually protective of its rights in an area of law which past experience has shown that all parties tend to benefit more from negotiating. The Court suspects that no matter what the Debtors offered, Home Federal would not deem itself protected. The Court would be forced to hold hearing after hearing until the Debtors happen to offer what the Court determines is appropriate. Therefore, the Court is short circuiting this procedure so that the Debtors can get on with the business at hand, proposing a plan of reorganization. See *In re Robinson,* 85 C 20228 (D.C.N.D.Ill.W.D.1985) (unpublished).

On the basis of the foregoing:

1. The Debtors should make payments of $1376.68 per month to Home Federal beginning January 1, 1988;

2. The Debtors should make payments of $187.50 per month to M & I beginning January 1, 1988;

3. The Debtors should make payments of $100 per month to First National beginning January 1, 1988; and

4. The stay should be lifted without further Order of this Court, as to an individual creditor, upon a default of 10 days of a payment to that creditor.

IT IS SO ORDERED.