**In re HAWAIIAN PACIFIC INDUSTRIES, Debtor.**

Max Marion MAUDE, Mary Jane Maude, Hawaiian Trust Company, Limited, as Trustee, for Margery Dee Dudley, Plaintiffs,

v.

**HAWAIIAN PACIFIC INDUSTRIES, Defendant.**

**Bankruptcy No. 81-0144.**

United States Bankruptcy Court, D. Hawaii.

Feb. 12, 1982.

Michael L. Freed, Honolulu, Hawaii, for creditors.

Tamotsu Tanaka, Honolulu, Hawaii, for debtor.

Richard L. Rost, Wailuku, Hawaii, for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

Hawaiian Pacific Industries, hereafter "Debtor", filed its petition under Chapter 11 on October 23, 1981. On November 5, 1981, Max Marion Maude, Mary Jane Maude, and Hawaiian Trust Company, Limited, as Trustee, for Margery Dee Dudley, hereafter "Plaintiffs", filed their Complaint for Relief from Automatic Stay.

A final hearing on the Complaint was held on December 22, 1981. Present were Richard Rost, representing the Plaintiffs; Keven Peterson and Tamotsu Tanaka, representing the Debtor; and Michael L.

Freed, representing William Woods Becker, Stanley Cook and Quiet Suburbs, Inc. Based upon the evidence adduced, the records and memoranda filed herein and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Due to failure on the part of Debtor to pay on a promissory note secured by a mortgage on a parcel of land situate on Maui, Plaintiffs filed a Complaint against Debtor and others on April 2, 1981, in the State Circuit Court.

2. On July 8, 1981, the State Circuit Court entered an Interlocutory Decree of Foreclosure and ordered the subject property sold. Earl Stoner, Jr., the commissioner appointed by the State Court made two attempts to sell the property at auction. The first auction had an upset price of $1,800,000.00 and there were no bidders. The second auction was to occur on October 27, 1981; however, Debtor filed its petition for relief on October 23, 1981, and such fact was made known to the Commissioner. There was no bid received by the Commissioner at the section auction which had an upset price of $1,000,000.

3. The real property involved is situate on Kihei Road, Maui, Hawaii, TMK 3-9-18, parcel 2, containing 4.753 acres.

4. Debtor has formulated plans to develop a resort-oriented residential condomium on the subject property. The project would contain 108 one-bedroom units and 36 two-bedroom units, with 184 parking stalls. The amenities would include tennis courts, cabana, a swimming pool and a wading pool.

5. The subject property is zoned for condomium use. A special Management Area (SMA) use permit has been granted and a building permit has been issued. The final building plans and specifications have been prepared and have been approved by the County of Maui. A Preliminary Public Report has been approved by the Hawaii Real Estate Commission.

6. Water for the project has been allocated by the County of Maui Department of Water Supply, subject to a source development fee of $1,000 per dwelling unit. Under rules currently in effect, competing projects which have not yet received building permits must await an allocation of water and are subject to a source development fee of $2,700 per dwelling unit. Allocations of water for such projects are subject to priority of projects having received prior approval and the allocations also are subject to availability of an unallocated portion of only 1.5 million gallons per day capacity available for condominium use in the Kihei area on an annual basis.

7. A commitment for a construction loan and for permanent financing of condominium unit purchases was offered by Honolulu Federal Savings and Loan Association. That commitment was not accepted by the Debtor because it is seeking more favorable financing. Purchase reservation contracts for nearly one-half of the project are currently in effect, with deposits in excess of $270,000.00 being held in escrow.

8. Max Maude, one of the Plaintiffs, testified that the subject property was sold to the predecessor of Debtor in 1979, for the sum of $1,200,000.00. He also testified that Debtor owed Plaintiffs approximately $850,000.00, which sum includes principal, interest, and costs, including attorney's fees and commissioner's fees. He believed the subject property to be worth approximately $750,000.00.

9. Two witnesses testified as to the value of the subject property. Mr. Stoner, the Commissioner appointed by the State Court, felt that the value was about $1 million in July 1981, but that as of December 1981, the value was about $800,000.00. Mr. Stoner felt that the value was down from July 1981 because of the poor economy, the high rate of interest, and the strong drop in commercial real estate market. But he also acknowledged that, in the long run, the value of real estate will generally increase.

10. The other witness was James Aganos. Mr. Aganos was retained by the Plaintiff two weeks prior to the hearing. In

arriving at his value, Mr. Aganos stated that he used the comparative approach, considered the Commissioner's reports to the State Court and discussed the matter with real estate brokers.

11. Mr. Aganos acknowledged that real estate generally appreciates in value. He stated, however, that because of the depressed economy and the high rate of interest, the value of real estate was now down. He also stated that he could not give a specific value but that he estimated the value of the subject property to be between $800,000.00 to $1,000,000.00.

12. These Findings of Fact, insofar as they are Conclusions of Law, are incorporated by reference in the Conclusions of Law as hereinafter stated.

## CONCLUSIONS OF LAW

1. Section 362(d) of the Bankruptcy Code provides for the lifting of the automatic stay as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

2. There is no question that the subject real property is necessary for an effective reorganization by Debtor. Thus, the relief requested can be granted only pursuant to 'Bankruptcy Code, Section 362(d)(1).

3. The Court finds that Mr. Stoner, in rendering his opinion of value, relied upon the foreclosure auctions rather than on any appraisal. He made no effort to compare the subject property with comparables. Neither did he use the residual method to estimate the market value of the subject

property. Mr. Stoner admitted that he was not familiar with the specific details of the development of the property. He knew the Debtor had developed architectual designs for a condominium project and that Debtor had obtained a preliminary HPR. Until the final hearing, Mr. Stoner was not aware that Debtor had water allocation. He assumed that the Debtor had a building permit since there were previous sales.

4. Mr. Aganos, the appraiser who testified on behalf of the Plaintiffs, had no previous experience in appraising condomium projects. Likewise, he was not aware that the plans and specifications for the project have already been completed, that the building permit and the SMA permit have been issued and that the project has been allocated the necessary water. Mr. Aganos acknowledged that, had he taken into considerations such matters, his appraisal of the subject property would have been adjusted upward, but that he could not render an opinion as to the amount of the additional value.

5. As a Commissioner, it was the responsibility of Mr. Stoner to learn everything about the subject property so that he could properly advertise such property for sale. His failure to learn the specific details of the property including allocation of water and the actual receipt of various permits shows that he did not adequately perform his duties. Without complete knowledge of a parcel of land, no one can adequately estimate its value or properly market such property.

6. Mr. Aganos indicated that there were three basic factors which influenced his opinion on the value of the subject property:

(1) the results of the foreclosure auctions as set forth in the Commissioner's reports;

(2) opinions requested from real estate brokers, who gave no opinion as to a specific value figure; and

(3) comparable sales based on records at the Tax Department and the Multiple Listing service.

7. Mr. Aganos specified ten characteristics which he claimed to have used as value adjustment factors when adjusting the value of comparable parcels to arrive at the fair market value of Debtor's parcel. These factors were: locations, size, shape, view, accessibility to beach, road frontage, plans and specifications, building permit, availability of water, and zoning.

8. One of the comparables used by Mr. Aganos was "Parcel B", a 4.7 acre parcel sold in 1979 at approximately $14.00 per square foot. Mr. Aganos testified that nine of the value adjustment factors were equal, resulting in no adjustment, and that the tenth factor, *i.e.*, accessibility to beach, required a 5% reduction in the value of the subject parcel, as compared with Parcel B.

8. A 5% deduction from $14.00 square foot means a deduction of $.70, leaving $13.30 square foot for the subject parcel. The subject parcel contains 4.753 acres, which is equivalent to 207,040.68 square feet. Based on the foregoing analysis, it means that the present value of the subject parcel exceeds $2,750,000.00. (207,040.68 square feet $\times$ $13.30 per square foot = $2,753,641.00.)

9. Mr. Aganos testified that land values have been falling, but he knew of no comparable property having been sold for less than its preceding sales price, nor did he know of any willing seller of a comparable property who had reduced his asking price.

■ 10. The Court finds that the lack of bidding at the second auction does not necessarily mean that the value of the subject property is less than $1,000,000.00. This second auction with an upset price of $1,000,000.00 was advertised only in the Maui News. It was not advertised in the Honolulu Advertiser or the Honolulu Star-Bulletin, both of which have a much larger circulation than the Maui News. Neither did the Commissioner testify that he made other efforts to publicize the sale of the subject property.

11. For the first auction, when the upset price was $1,800,000.00, Mr. Stoner advertised in the Honolulu Advertiser. But, for the second auction, Mr. Stoner advertised only in the Maui News. The Court finds that Mr. Stoner did not properly advertise the second auction with a lower upset price than the first auction.

12. Furthermore, prior to the second auction, Defendant had filed its petition in the Bankruptcy Court. This factor may have deterred prospective bidders from appearing at the second auction. For the foregoing reasons, the Court finds that the lack of bidding at the second auction does not necessarily mean that the subject property is not worth $1,000,000.00.

13. Both Mr. Stoner and Mr. Aganos were not fully aware of the extent of the development of the subject property by Debtor. Mr. Aganos acknowledged that, if he had known that the plans and specifications for the project had been completed, that the necessary water had been allocated and that the necessary permits had been issued, it would have increased his estimate of the value of the subject property.

14. Based on the foregoing analysis of Mr. Stoner's and Mr. Aganos' testimony, the Court finds the present value of the subject property to be $1,000,000.00.

15. Having found the present value of the subject property at $1,000,000.00 and the liability owing to the Plaintiffs at $850,-000.00, the Court finds that there is presently equity of approximately $150,000.00 in favor of Debtor. Thus, there is adequate protection for the Plaintiffs at the present time.

■ 16. Plaintiffs have also contended that the automatic stay should be lifted because the Defendant has not submitted a viable plan.

17. The petition was filed on October 23, 1981, and the hearing was held on December 22, 1981, approximately 60 days after the petition was filed. The Defendant has a period of 120 days wherein it has the exclusive right to submit a plan of reorganization.

18. Defendant already has its plans and specifications for its condominium project, along with the necessary permits. Financ-

ing is the only thing left before construction can commence.

19. Based on the foregoing, the Court finds that it is only equitable to permit the Defendant to present a viable plan within a reasonable time. Thus, for the present, the Court finds that the lack of a definite plan of reorganization is insufficient cause to lift the automatic stay.

20. These Conclusions of Law, insofar as they are Findings of Fact, are incorporated by reference in the Findings of Fact as hereinabove stated. The Court, having found adequate protection for the present, hereby denies Plaintiffs' Complaint to lift stay, with leave granted to Plaintiffs to renew their request if they deem that their adequate protection is in any way being jeopardized.

Let judgment be entered accordingly upon presentation by counsel.