In re James F. KOST, d/b/a Kost Enterprises, d/b/a JFK Enterprises, Debtor.

James F. KOST, d/b/a Kost Enterprises, d/b/a JFK Enterprises, Appellant,

v.

FIRST INTERSTATE BANK OF GREYBULL, Appellee.

No. C87–0232J.

United States District Court, D. Wyoming.

July 7, 1989.

James F. Kost, Basin, Wyo., pro se.

M. Scott McColloch, Greybull, Wyo., for appellee.

## ORDER AFFIRMING BANKRUPTCY COURT

JOHNSON, District Judge.

### Background

On 15 April 1985 James F. Kost filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The First In-terstate Bank of Greybull, N.A., holds a properly perfected first mortgage lien on Mr. Kost's residence near Basin, Wyoming. On 6 February 1987 the bank filed a motion to vacate stay. (R.A., 200) On 18 February 1987 Mr. Kost filed an answer to this motion. On 1 April 1987 Mr. Kost filed a motion to dismiss the creditor's motion to vacate stay. (R.A. 170) On 14 April 1987 the Bankruptcy Court for the District of Wyoming heard arguments on the Bank's motion and ruled in the bank's favor. On 22 April 1987 Mr. Kost filed a motion for reconsideration. On 5 May 1987 the bankruptcy court entered an Order Modifying Stay. On 13 May 1987 the bankruptcy court entered findings of fact and conclusions of law. On 15 May 1987 Mr. Kost filed a Notice of Appeal from the Bankruptcy Court's Order Modifying Stay.

On 6 July 1987 Mr. Kost filed his Brief of Appeal. On 17 July 1987 the First Interstate Bank of Greybull, N.A., filed its Brief on Appeal. On 6 July 1988 Mr. Kost filed a Memorandum containing several supplementary materials. On 22 July 1988 a hearing was held before this court. On 17 October 1988 a transcript of the hearing proceedings was filed.

### Standard of Review

Under Bankruptcy Rule 8013 and Fed.R. Civ.P. 52(a) this court is bound to accept the findings of the bankruptcy judge unless they are clearly erroneous. *In re Reid,* 757 F.2d 230, 233 (10th Cir.1985) (citing *Leaseamerica Corporation v. Eckel,* 710 F.2d 1470, 1474 (10th Cir.1983); *Farmers Co–Operative Association of Talmage, Kansas v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982); *In re White House Decorating Company,* 607 F.2d 907, 910 (10th Cir. 1979)). This court must apply the same standard under Bankruptcy Rule 8013 and Fed.R.Civ.P. 52(a). *In re Yeates,* 807 F.2d 874, 877 (10th Cir.1986). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction when a mistake has been committed." *In re Pikes Peak Water Company,* 779 F.2d 1456, 1458 (10th Cir. 1985) (quoting *United States v. United*

*States Gypsum Company,* 333 U.S. 364, 395 (1948). "The bankruptcy court's findings should not be disturbed absent 'the most cogent reason appearing in the record.'" *Pikes Peak Water Company,* 779 F.2d at 1458 (quoting *In re Reid,* 757 F.2d at 233–34). A bankruptcy court's conclusions of law, however, are freely reviewable under a de novo standard. *Bartmann v. Maverick Tube Corporation,* 853 F.2d 1540, 1543 (10th Cir.1988); *In re Yeates,* 807 F.2d at 877.

### Relief from Stay

■ On 6 February 1987 First Interstate Bank of Greybull, N.A., filed a Motion to Vacate Stay. The underlying basis for the relief was 11 U.S.C. § 362(d), which provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

On 18 February 1987 Mr. Kost filed an Answer to Motion to Vacate Stay, asserting in part "[t]hat debtor has a substantial equity in said property therefore providing adequate protection to creditor." In his Findings of Fact and Conclusions of Law, the bankruptcy judge recognized that adequate protection might be shown by the existence of an "equity cushion," even though that method is not specifically enumerated in 11 U.S.C. § 361.

Under Bankruptcy Rule 4001, "[a] request for relief from an automatic stay provided by the Code ... shall be made in accordance with Rule 9014." Bankruptcy Rule 9014 relates to "contested matters" as opposed to "adversary proceedings." *In re Swiczkowski,* 84 B.R. 484, 487 (Bankr.N.D.

Ohio 1988). Thus, Mr. Kost's argument that the proceedings are flawed for not following an adversary proceeding format are incorrect.

As the party requesting modification of the automatic stay of 11 U.S.C. 362(a), First Interstate Bank of Greybull has the burden of proof on the issue of the debtor's equity in property. Mr. Kost has the burden of proof on all other issues. 11 U.S.C. § 362(g). To support his view that the bank is adequately protected, Mr. Kost points to what he sees as an adequate equity cushion. Equity cushion is "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during the time the automatic stay remains in effect." *In re Mellor,* 734 F.2d 1396, 1400 n. 2 (9th Cir.1984) (citing *In re Roane,* 8 B.R. 997, 1000 (Bankr.E.D.Pa.1981), *aff'd,* 14 B.R. 542 (E.D.Pa.1981)).

■ Whether an equity cushion provides adequate protection to a creditor is determined on a case-by-case basis rather than by mechanical application of a formula. *In re McKillips,* 81 B.R. 454, 458 (Bankr.N.D. Ill.1987) (citing *In re Tucker,* 5 B.R. 180 (Bankr.S.D.N.Y.1980)). *See also In re Southerton Corporation,* 46 B.R. 391 (M.D.Pa.1982); *In re Timbers of Inwood Forest,* 793 F.2d 1380, 1387 (5th Cir.1986), *aff'd,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Over time, however, various bankruptcy decisions have provided this court with guidance:

Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection. *In re San Clemente Estates,* 5 B.R. 605 (Bankr.S. D.Ca.1980) (65% is adequate); *In re Nashua Trust Co.,* 73 B.R. 423 (Bankr.D. N.J.1987) (50% is adequate); *In re Ritz Theatres,* [68 B.R. 256 (Bankr.M.D.Fla. 1987)] (38% is adequate); *In re Dunes Casino Hotel,* 69 B.R. 784 (Bankr.D.N.J. 1986) (30% is adequate); *In re Helionetics,* 70 B.R. 433 (Bankr.C.D.Ca.1987) (20.4% is adequate); and, *In re Mellor,* [734 F.2d 1396 (9th Cir.1984)] (20% is adequate); *But see, In re Lee,* 11 B.R. 84

(Bankr.E.D.Pa.1981) (41% requires payment of current interest). Case law has almost as uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection. *Ukrainian Savings and Loan Assoc. v. The Trident Corp.*, 22 B.R. 491 (E.D.Pa.1982) (10% is inadequate); *In re McGowan*, 6 B.R. 241 (Bankr.E.D.Pa.1980) (10% is inadequate); *In re Liona Corp., N.V.*, 68 B.R. 761 (Bankr.E.D.Pa.1987) (8.9% inadequate); *In re Jug End in the Berkshires, Inc.*, 46 B.R. 892 (Bankr.D.Mass.1985) (8.6% insufficient); *In re Castle Ranch of Ramona, Inc.* 3 B.R. 45 (Bankr.S.D.Ca. 1980); (8.6% is insufficient); and, *In re LeMay*, 18 B.R. 659 (Bankr.D.Mass.1982) (7% is inadequate); *but see, In re Carson*, 34 B.R. 502 (D.Ka.1983) (11% is adequate). Case law is divided on whether a cushion of 12% to 20% constitutes adequate protection. *In re Schaller*, 27 B.R. 959 (W.D.Wisc.1983) (17% to 18% is insufficient); *In re Hawaiian Pacific Industries*, 17 B.R. 670 (Bankr.D.Ha.1982) (15% is adequate); *In re Rogers Development Corp.*, 2 B.R. 679 (Bankr.E.D.Va. 1980) (17% is adequate); *In re Pitts*, 2 B.R. 476 (Bankr.C.D.Ca.1979) (15% is adequate).

*In re McKillips*, 81 B.R. at 458. The central dispute in this case is the amount of the equity cushion.

◼ In the bankruptcy judge's Findings of Fact and Conclusions of Law, he found that the principal balance on Mr. Kost's promissory note to First Interstate Bank of Greybull, N.A., was $89,881.47. He further found that on the date of hearing interest and late charges were an additional $13,056.66. Together these figures provided a debt of $102,937.96 together with interest at 13.23%, or $32.46 a day. In his brief, Mr. Kost charges that the court acted *sua sponte* in calculating this debt figure. After reviewing the transcript of the 14 April 1987 hearing, this court disagrees. Herbert Kulow, president of First Interstate Bank of Greybull, testified to the figures used by the bankruptcy court. (T. 6–15–87 at 12–13) Nothing in the transcript reveals that Mr. Kost provided contrary evidence. At oral argument before this court, Mr. Kost asserted that the amount of interest ordinarily owed is not relevant in calculating debt for purposes of equity cushion. (T. 7–22–88 at 102) Case law does not bear out this view. *See, e.g., In re McKillips*, 81 B.R. at 458; *In re Digby*, 47 B.R. 614, 622 (Bankr.N.D.Ala. 1985); 11 U.S.C. § 506(b). This court agrees with the bankruptcy court on the debt figure calculated.

Both at the 14 April 1987 hearing and in the Findings of Fact and Conclusions of Law, the bankruptcy court calculated the value of the property at that date as no more than $116,198. In so doing, the bankruptcy court obviously relied heavily on the testimony of Que Mangus. Mr. Mangus has been an appraiser for three and one-half years and is a member of the Society of Real Estate Appraisers–Chicago. (T. 40–14–87 at 27–28) He testified that he had conducted between 110 and 150 appraisals of residential property in the previous year. Approximately 40 of these properties were in the Greybull/Basin area. *Id.* at 40. Mr. Mangus testified that approximately 90 homes were available for sale in the Greybull/Basin area. He further testified as to a "very, very limited market" for houses in the $100,000 to $140,000 range. *Id.* at 30–31.

Mr. Mangus testified to tough economic conditions in the area. He described 1981 as a boom time. Apparently soon thereafter, the bentonite plant reduced its work force by approximately two-thirds. He estimated that property values had fallen approximately 6% per year from 1981 until 1987. *Id.* at 29–30.

At the 14 April 1987 hearing, Mr. Kost attempted to introduce into evidence a 30 March 1987 appraisal. The appraisal was conducted by Chuck Edwards, the same appraiser who had valued the property at $140,000 in 1983. Although the 1987 appraisal was not specifically refused into evidence, this court notes that it never made its way there. This court does not consider the 1987 appraisal as new evidence on appeal since the bankruptcy judge obviously had it in front of him. Accord-

ingly, the court will consider that appraisal in making its decision.

According to the 1987 appraisal, Mr. Kost's residence was worth, weighted for market conditions, $166,600. This figure was reached by comparing the sales price of three inferior properties. Unfortunately, Mr. Kost merely offered the written appraisal and did not offer any testimony by the appraiser subject to cross-examination.

To justify the view that his residence accrued in value in a declining economy, Mr. Kost has repeatedly alluded to unstated improvements to the property. (T. 4–14–87 at 48) In the hearing before this court, Mr. Kost got more specific, citing two examples of improvements occurring between the appraisals. First, the basement that had been unfurnished in 1983 had subsequently been completely furnished. Second, Mr. Kost pointed to a greenhouse that had subsequently been attached to the house. (T. 7–22–88 at 122–23) The First Interstate Bank of Greybull, N.A., objected to the appraisals as including several improvements not subject to the lien mortgage. As examples, it cited a tennis court, a four-car garage, and much of the landscaping and access to the house. (T. 7–22–88 at 117–19)

It was Mr. Kost's burden to provide specific evidence of the values of improvements subject to the mortgage. He did not do so. The court further notes that Mr. Kost effectively precluded the bank from obtaining its own appraisal. On 27 March 1987 the bank filed an Application for Order Allowing Creditor to Enter Upon Debtor's Property for an Appraisal and Survey. In the accompanying affidavit, Herbert Kulow testifies that on 19 March 1987 he called Mr. Kost at his residence and spoke with him. He asked Mr. Kost if he could set a date and time for an appraiser to come on his property. Mr. Kost replied, "I don't think so." Mr. Kulow then asked, "What do you mean, are you telling me that you are not going to let us on the property to do an appraisal?" Mr. Kost responded, "That's right," and the conversation ended.

In addition, the bankruptcy judge found that "[t]he condition of the home has seriously deteriorated since the filing." As examples of such deterioration, the bankruptcy judge cited peeling in the exterior paint and trim and leakage from the room that had damaged the ceiling of the porch and entryway. This finding is supported by evidence obtained from Mr. Kulow and Mr. Mangus at the hearing. (T. 4–14–87 at 14–15, 29, 34) Mr. Kost's response was that he had no present ability to provide for repairs. Because Mr. Kost would not allow an inspection of the inside of the residence, it was uncertain the extent of damage there. It does not appear that the bankruptcy court took these factors into account in establishing the value of $116,198.

"In reviewing the factual findings, an appellate court may not weigh the evidence or reverse a finding because it would have decided the case differently." *Bartmann v. Maverick Tube Corporation*, 853 F.2d at 1543 (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Having reviewed the filings of the parties and the transcripts of the hearings, the court cannot say that the bankruptcy court's findings are clearly erroneous. The court is simply not "left with a definite and firm conviction that a mistake has been committed."

Applying the bankruptcy court's value and debt calculations, this court also finds an equity cushion of approximately 11.5%. This court agrees that this equity cushion does not provide adequate protection to the bank in the circumstances of this case. Mr. Kost admits that his insurance on the residence has lapsed and that he is not financially able to maintain the property. In addition, insurance premiums are accruing and the real estate market in the area is declining. Finally, as the bankruptcy court found, the bank could not in all likelihood sell the property for its full value in less than a year to a year and a half.

### Mootness

On 1 July 1988, three weeks before this court's hearing in this matter, the bankruptcy court dismissed Mr. Kost's personal Chapter 11 bankruptcy case from which the present adversary arose. On 4 October 1988 the district court affirmed the dismis-

sal of Mr. Kost's personal bankruptcy case. On 29 June 1989 the Tenth Circuit Court of Appeals affirmed this decision (No. 88–2592). Any remand to the bankruptcy court to continue the stay would be fruitless since no stay exists. Even if this were not so, Mr. Kost's actions would preclude his suggested relief. As noted in this court's 6 July 1988 Order Ruling on "Emergency Request to Stay Proceedings in State District Court Pending Appeal," Mr. Kost could have stayed the bankruptcy court's order modifying the automatic stay by filing a supersedeas bond in the amount of $5,000. Apparently he did not do so and the residence has been sold at foreclosure. For both these reasons, this court makes an additional finding that this appeal is moot.

IT IS HEREBY ORDERED that the bankruptcy court's Findings of Fact and Conclusions of Law of 13 May 1987 are AFFIRMED in all respects.