**In re JAMES RIVER ASSOCIATES, Debtor.**

**EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Appellant/Appellee/Cross–Appellant.**

**v.**

**JAMES RIVER ASSOCIATES, Appellee/Appellant.**

**Civ. A. Nos. 4:92cv110, 4:92cv140 and 4:92cv143.**

United States District Court, E.D. Virginia, Newport News Division.

Dec. 31, 1992.

Patrick Louis Hayden, McGuire, Woods, Battle & Boothe, Norfolk, VA, Hovey Slayton Dabney, Jr., McGuire, Woods, Battle & Boothe, Richmond, VA, for Equitable Life.

James Robert Sheeran, Marcus, Santoro & Kozak, Portsmouth, VA, Richard Wilson Hudgins, Newport News, VA, for James River Associates.

## ORDER

CLARKE, District Judge.

This matter is before the Court on consolidation of the appeals of three orders from the United States Bankruptcy Court for the Eastern District of Virginia. The Debtor, James River Associates ("JRA"), a Virginia General Partnership, filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 13, 1992. In Civil Action No. 4:92cv110, Equitable Life Assurance Society of the United States ("Equitable") appeals an order of the bankruptcy court entered July 10, 1992 dismissing Equitable's Motion to Prohibit Use of Cash Collateral (the "Cash Collateral Appeal"). In Civil Action No. 4:92cv140, the Debtor appeals and Equitable cross-appeals an order of the bankruptcy court entered October 1, 1992 granting Equitable's Motion for Relief from Automatic Stay (the "Relief from Stay Appeal"). Finally, in Civil Action No. 4:92cv143, the Debtor appeals and Equitable cross-appeals an order of the bankruptcy court entered October 20, 1992 granting Debtor's Motion for Stay (of the court's relief from the automatic stay order) Pending Appeal (the "Bond Appeal"). For the reasons outlined below, the decision of the bankruptcy court in Civil Action No. 4:92cv140 to grant relief from the automatic stay is AFFIRMED. Consequently, the decisions to dismiss Equitable's cash collateral motion in Civil Action No. 4:92cv110 and to stay the relief order pending appeal in Civil Action No. 4:92cv143 need not be reviewed.

## I. Facts and Procedural History

The Debtor is the owner of a 15 acre parcel of land in James City County, Virginia (the "Property") upon which is situated the Williamsburg Hilton and National Conference Center (the "hotel"). Debtor executed and delivered a Note dated February 8, 1980 payable to the order of Equitable in the original principal amount of $13,500,000 (the "Note"). Equitable is the holder of the Note. The Note is secured by the lien of a first Deed of Trust dated February 8, 1980 (the "Deed of Trust"). The Deed of Trust conveys the hotel Property along with the "rents, issues and profits" arising from the Property.

By lease dated August 1, 1979 (the "Lease"), Debtor leased the Property to The Inn at James River, Inc. (the "Inn"). Both the Debtor and the Inn are controlled by James K. Wolosoff ("Wolosoff"). The Inn generates daily income from the operation and management of the Property as a hotel and conference center. Under the Lease, the Inn is required to pay the Debtor $125,000 a month. The Inn has not paid rent to the Debtor under the Lease since March 1991; rather, the Inn has used its hotel receipts to finance renovations to the hotel. Likewise, the Debtor has made no payments to Equitable on the Note since April 1991.

On February 13, 1992, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. The Debtor was in default on the Note and Deed of Trust prior to filing its bankruptcy petition. On June 8, 1992, Equitable filed both a Motion to Prohibit Use of Cash Collateral or to Provide for Adequate Protection and a Motion for Relief from Automatic Stay.

### A. *Motion to Prohibit Use of Cash Collateral*

In its Motion to Prohibit Use of Cash Collateral, Equitable asserted that it had a lien on the Debtor's rents, issues and profits which constituted the cash collateral of the Debtor. Equitable claimed that both the Debtor and Wolosoff directed the Inn not to pay the rent due under the Lease, but rather to use the money for renovations. Since interest continued to accrue on the Note, Equitable claimed it would suffer irreparable harm if the bankruptcy court did not prohibit the use of the cash collateral or otherwise require the Debtor to provide adequate protection.

On July 2, 1992, the bankruptcy court held a hearing on the cash collateral mo-

tion. The Debtor moved to dismiss the motion on the ground that there was no properly perfected security interest in the hotel rents.[1] The bankruptcy court agreed with the Debtor and dismissed the motion, finding that in order to properly perfect a security interest in the hotel rents, the procedures of the Uniform Commercial Code ("UCC") must be followed.[2] Further, the court held that the Debtor does not have a fiduciary duty to collect rent from the Inn.

### B. *Motion for Relief from Automatic Stay*

Equitable also sought relief from the automatic stay in order to exercise its rights under the Note and Deed of Trust and foreclose on the Property. In its Motion for Relief from Automatic Stay, Equitable alleged that the Note and Deed of Trust were in default; the Debtor owed approximately $13.5 million principal and interest on the Note as of the date of filing for bankruptcy (which increased to $14 million as of the date of the motion); and the Debtor had made no payments on the Note to Equitable since filing the petition. Thus, Equitable asserted it was entitled to relief from the automatic stay because it was not adequately protected pursuant to 11 U.S.C. § 362(d)(1), or, in the alternative, pursuant to 11 U.S.C. § 362(d)(2) because neither the debtor had any equity in the Property nor was the Property necessary for an effective reorganization.

At the hearing on Equitable's Motion for Relief from Automatic Stay held on September 18 & 22, 1992, the bankruptcy court heard testimony and received evidence from several persons including, three hotel appraisers, two accountants, a hotel consultant, and Mr. Wolosoff. The court also received a stipulation from the parties primarily regarding the amount of outstanding debt under various interest rate scenarios. Finally, the court heard evidence of the Debtor's proposed plan of reorganization which included a $1.3 million lien equal to or superior to Equitable's lien (the "priming lien"). The proceeds of the priming lien would be used to fund renovations.

The bankruptcy court found that although the Debtor did not have any material equity in the Property, the Property was necessary for an effective reorganization. In any event, the court found that Equitable's interest in the Property was not adequately protected. Accordingly, the court granted Equitable's motion and modified the automatic stay so Equitable could exercise its rights under the loan documents.

### C. *Motion for Stay Pending Appeal*

Equitable scheduled a foreclosure sale for October 21, 1992. On October 8, 1992, the Debtor filed a Motion for Stay (of the relief from the automatic stay order) Pending Appeal, arguing that without a stay, Equitable's foreclosure would moot its appeal of the relief from the automatic stay order; it would likely prevail on the issues raised on appeal; it would suffer irreparable harm without the stay while Equitable would suffer no harm; and a stay would not harm the public interest. At the hearing on the motion on October 15, 1992, the court granted the stay, but ordered the Debtor to post bonds to cover Equitable's appeal costs and 90 days worth of accruing interest. The court also ordered the Debtor to reimburse Equitable its foreclosure sale costs and to escrow sufficient funds to pay 1992 real property taxes.

### D. *Appeals to this Court*

In this Court, Equitable appeals the dismissal of its Motion to Prohibit Use of

---

1. The Court notes that there are two rents involved in this case. First, there are hotel room rents received by the Inn from its operation of the hotel. Second, there is the rent due under the Lease that the Inn is obligated to pay the Debtor. In dismissing the cash collateral motion, the bankruptcy court did not appear to distinguish between these two types of "rent." Because, as discussed below, the Court finds it unnecessary to decide the Cash Collateral Appeal, the Court will not attempt to properly classify the rents involved.

2. On July 17, 1992, Equitable filed a Motion to Reconsider asserting that it had indeed followed the procedures of the UCC and thus did have a proper security interest in the hotel rents. By order entered July 23, 1992, the bankruptcy court denied the motion.

Cash Collateral, both the Debtor and Equitable appeal the granting of Equitable's Motion for Relief from Automatic Stay, and both the Debtor and Equitable appeal the granting of the Debtor's Motion for Stay Pending Appeal.

On November 5, 1992, this Court heard oral argument on the Cash Collateral Appeal. Further, after consultation and agreement of the parties, this Court expedited the briefing schedule and, on December 7, 1992, heard oral argument on both the Relief from Stay Appeal and the Bond Appeal. The three appeals have been consolidated and are now ready for decision.

## II.  Standard of Review

On appeal to the district court, a bankruptcy court's factual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankr.R. 8013; *see also In re Morris Communications NC, Inc.*, 914 F.2d 458, 467 (4th Cir. 1990). A finding of fact is "clearly erroneous" "when, although there is evidence to support it, the reviewing court ... is left with the definite and firm conviction that a mistake has been made." *Morris Communications*, 914 F.2d at 467 (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

A bankruptcy court's legal conclusions are reviewed *de novo*. *See, e.g., Morris Communications*, 914 F.2d at 467; *In re Club Assoc.*, 951 F.2d 1223, 1229 (11th Cir. 1992); *Finney v. Smith*, 141 B.R. 94, 97 (E.D.Va.1992).

## III.  Discussion

### A.  *Relief from Stay Appeal*

The bankruptcy court granted Equitable relief from the automatic stay so it could exercise its rights under the loan documents. Initially, the court found that under 11 U.S.C. § 362(d)(2)(A), the Debtor did

not have material equity in the Property. The court based this finding on the fact that while the fair market value of the Property was $15,000,000, the unpaid balance on the Note as of September 18, 1992 totaled $14,672,057.64 ($11,946,701.86 principle and $2,725,335.78 interest[3]). In addition to the unpaid balance on the Note, costs of collection, including attorneys' fees, amounted to approximately $110,000, and unpaid real estate taxes on the Property for the years 1990 and 1991 totaled $264,624.44. However, the court did find that under 11 U.S.C. § 362(d)(2)(B), the Property was necessary to an effective reorganization.

Alternatively, the court found, pursuant to 11 U.S.C. § 362(d)(1), that Equitable's interest in the Property was not adequately protected because:

1.  The Equitable's security position is deteriorating as interest accrues [at $5,236.91 per day];

2.  real estate taxes are delinquent [in the amount of $264,624.44];

3.  The Equitable has not received a payment on the Note since April 1991;

4.  The Equitable has received no payments on the Note since the filing of the petition;

5.  the Debtor must borrow funds to complete the necessary renovation for the Property; and

6.  the borrowing of such funds to complete renovation would deteriorate the security position of The Equitable.

Accordingly, the court modified the conditions of the automatic stay to allow Equitable to proceed under its loan documents.

■ In this Court, both the Debtor and Equitable challenge the bankruptcy court's findings in granting relief from the automatic stay. The Debtor challenges the bankruptcy court's finding under 11 U.S.C. § 362(d)(1) that Equitable was not adequately protected. It argues that Equitable was adequately protected by its "equity

---

**3.** The court found the default interest rate of 16% applicable. At the default rate, interest accumulated at a rate of $5,236.91 per day.

cushion"[4] since the Property was not declining in value, by the renovations to the hotel, and by the future bookings. Further, the Debtor argues that the bankruptcy court erred in using the 16% contractual default rate of interest when calculating the amount of interest to which Equitable was entitled.[5]

Equitable, on the other hand, challenges the bankruptcy court's finding under 11 U.S.C. § 362(d)(2) that the value of the Property was $15 million and that the Property was necessary to an effective reorganization. It argues that in order for a Property to be necessary to an effective reorganization, a successful reorganization must be "in prospect." Equitable contends that, under the Debtor's plan, reorganization is not in prospect because the priming lien would deteriorate Equitable's security position, there is no evidence that the Property can pay the debt post-petition, and the Debtor proposes to reinstate the non-default terms of the loan without curing the defaults, all of which would prevent the bankruptcy court from confirming the Debtor's plan of reorganization.

In this case, the bankruptcy court made findings under both section 362(d)(1) and section 362(d)(2). It granted relief from the automatic stay under section 362(d)(1) (lack of adequate protection), which the Debtor challenges, but denied relief under section 362(d)(2) (property necessary to an effective reorganization), which Equitable challenges. Because sections 362(d)(1) and 362(d)(2) are phrased in the disjunctive, relief from the automatic stay can be granted under either provision. *See In re Wieseler*, 934 F.2d 965, 968 (8th Cir.1991). Since, as discussed below, this Court affirms the bankruptcy court's grant of relief from the automatic stay under section 362(d)(1), it is unnecessary to decide whether the court erred in denying relief under section 362(d)(2).

Section 362(d)(1) of the Bankruptcy Code allows the bankruptcy court to grant relief from the automatic stay "for cause, including the lack of adequate protection" of a secured creditor's interest in the secured property. 11 U.S.C. § 362(d)(1). The bankruptcy court found that Equitable was not adequately protected because Equitable's equity cushion was deteriorating as interest accrued, real estate taxes were delinquent, Equitable had not received payments on the Note since April 1991, and the priming lien necessary for the Debtor to reorganize would further deteriorate Equitable's security position.

■ The Debtor's challenge primarily involves the bankruptcy court's finding that Equitable's equity cushion was deteriorating due to the accumulation of unpaid interest. The bankruptcy court found the fair market value of the Property was $15 · million.[6] The court also found that unpaid principle on the Note amounted to $11,946,-701.86 and unpaid interest on the Note at the default rate of 16% amounted to $2,725,335.78 for a total debt of $14,672,-

---

4. An "equity cushion" is " 'the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during the time the automatic stay remains in effect.' " *In re Kost*, 102 B.R. 829, 831 (D.Wyo.1989) (citations omitted).

5. The Debtor also asserts error in a continuance order entered on August 7, 1992 whereby the bankruptcy court required the Debtor to escrow $100,000 for Equitable's benefit in connection with the court's granting of the Debtor's Motion for Continuance of the relief from the automatic stay hearing. However, other than a reference in its Opening Brief that it reserved argument on this issue for its Reply Brief, the Debtor has neither briefed nor argued this issue.

Thus, it appears that the Debtor has abandoned this issue.

6. Findings by the bankruptcy court regarding value and credibility of witness used as a basis to determine adequate protection are questions of fact which will not be disturbed unless "clearly erroneous." *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir.1986). The bankruptcy court heard testimony that the value of the Property ranged from $9.6 million to $17 million depending on whether it was valued "as is" or after renovations. Furthermore, the assessed value for tax purposes was $15,238,000. The finding by the bankruptcy court that the fair market value of the Property was $15 million is not clearly erroneous.

057.64. This leaves an equity cushion of $327,942.36 or 2%.[7]

■ Under the "equity cushion" theory, if a debtor has equity in a property sufficient to shield the creditor from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, then the creditor is adequately protected. *See In re Kost,* 102 B.R. 829, 831 (D.Wyo.1989); *In re Lane,* 108 B.R. 6, 7 (Bankr.D.Mass.1989). The amount of equity cushion sufficient to adequately protect the creditor is determined on a case-by-case basis. *Kost,* 102 B.R. at 831. However, the reported cases do provide some guidance:

> Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection.... Case law has almost as uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection.... Case law is divided on whether a cushion of 12% to 20% constitutes adequate protection....

*Id.* at 831–832 (citations omitted) (quoting *In re McKillips,* 81 B.R. 454, 458 (Bankr. N.D.Ill.1987)). As noted above, the equity cushion in this case was only 2%. Thus, the bankruptcy court's conclusion that Equitable was inadequately protected because of the deterioration of its equity cushion from accumulating interest was not in error.[8]

■ Recently, however, several courts have reconsidered and rejected the equity cushion theory. *See, e.g., Lane,* 108 B.R. at 10 (citing cases). One reason for the change in the view is the Supreme Court's determination "that the 'value' of a creditor's interest in property that merit[s] [adequate] protection [is] the 'value of the col-

lateral.'" *In re Westchase I Assocs., L.P.,* 126 B.R. 692, 694 (W.D.N.C.1991) (quoting *United Savings Assoc. of Texas v. Timbers of Inwood Forest, Ltd.,* 484 U.S. 365, 372–73, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988)). Therefore, as long as the "value of the property itself is not declining, ... the creditor [will] not be entitled to protection of the accruing interest value of the claim." *Id.* Because, however, there are sufficient other justifications for finding a lack of adequate protection, this Court need not decide the merits of the equity cushion theory.

■ First, the bankruptcy court found that the real estate taxes were delinquent for tax years 1990 and 1991 in the amount of $264,624.44. The failure to pay real property taxes may constitute a basis for finding lack of adequate protection. *See Lane,* 108 B.R. at 11; *In re Epps,* 2 Collier Bankr.Cas.2d (MB) 97 (Bankr.S.D.N.Y. 1980); *cf. In re Brown,* 78 B.R. 499, 503 (Bankr.S.D.Ohio 1987) (creditor failed to offer evidence that property lacked adequate protection such as non-payment of taxes). When the equity cushion disappears, the value of the creditor's interest in the property "will begin to decline if taxes on the real and personal property (including interest on taxes now due) continue to go unpaid because these taxes have priority over the [creditor's] mortgage." *Lane,* 108 B.R. at 11. In this case, the equity cushion has all but disappeared, real estate taxes have not been paid for 1990 and 1991, and interest continues to accrue on those unpaid taxes. These unpaid taxes and interest further deteriorate Equitable's security position. Thus, the bankruptcy court did not err in granting relief from the automatic stay for failure to pay real estate taxes.

---

7. This amount is calculated without including the delinquent real estate taxes of $264,624.44 and the costs of $110,000. If those amounts are considered, Equitable clearly lacks equity. *See In re Faires,* 34 B.R. 549, 551 (Bankr.W.D.Wash. 1983) (equity is the "difference between the value of the property and all encumbrances against it").

8. The result is no different even if the bankruptcy court was incorrect in applying the default rate of interest. Debtor contends that the con-

tract default rate of 16% was improper, arguing instead for either the pre-default contract rate of 10.25% or the current market rate. Since Debtor offered no evidence regarding the current market rate, he is foreclosed from now asserting the market rate. Even at the pre-default contract rate of 10.25%, the outstanding principle and interest is $13,741,056.55, leaving an equity cushion of $1,258,943.45 or 8%. Such an equity cushion would not adequately protect Equitable.

█ Furthermore, the bankruptcy court found that there was a lack of payments to Equitable on the Note since April 1991, including no payments since filing the bankruptcy petition. A continued failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay.[9] *See, e.g., In re Kerns,* 111 B.R. 777, 789–90 (S.D.Ind. 1990); *In re Klepper,* 69 B.R. 98, 100 (Bankr.M.D.Pa.1987). Typically, however, cause will only be found where the failure to make monthly payments corresponds with a nonexistent equity cushion. *Kerns,* 111 B.R. at 790 (citing *In re Morysville Body Works, Inc.,* 86 B.R. 51, 57 (Bankr. E.D.Pa.1988)). As of the relief hearing, there was both a small or nonexistent equity cushion and a failure to make monthly payments for approximately 17 months (7 months since filing the bankruptcy petition). Thus, the bankruptcy court did not err in granting relief from the automatic stay for failure to make monthly payments.

Finally, the bankruptcy court found that Equitable's security position would be deteriorated by the proposed priming lien which the Debtor needs to reorganize. When a priming lien is involved, some courts "decide the issue of adequate protection ... by attempting to determine whether the lender subject to priming will be left with an equity cushion." *In re Aqua Assocs.,* 123 B.R. 192, 196 (Bankr.E.D.Pa.1991) (citing cases); *see also Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.),* 789 F.2d 1085, 1088–90 (4th Cir.1986). Other courts look to the nature of the repayment plan to determine if it is speculative. *See, e.g., In re Timber Prods., Inc.,* 125 B.R. 433, 440 (Bankr.W.D.Pa.1990); *In re St. Petersburg Hotel Assocs., Ltd.,* 44 B.R. 944, 946 (Bankr.M.D.Fla.1984). In this case little or no equity cushion exists. Thus, a priming lien would further deteriorate Equitable's security position. Furthermore, the bankruptcy court considered that the proposed repayment plan based on the priming lien was merely a "projection." [10] Thus, given the lack of an equity cushion and the speculative nature of the repayment plan, the bankruptcy court did not err in granting relief from the automatic stay because of the deterioration of Equitable's security position due to the priming lien.

After a *de novo* review of the bankruptcy court's conclusion of law, and after determining that none of the findings of fact are clearly erroneous, this Court concludes that the bankruptcy court did not err in granting Equitable's Motion for Relief from Automatic Stay. The bankruptcy court properly found that the diminishing equity cushion, the delinquent real estate taxes, the lack of payments on the Note since April 1991, and the deterioration of Equitable's security position under the priming lien constitute, both independently and together, a lack of adequate protection under 11 U.S.C. § 362(d)(1).[11] Accordingly, the bankruptcy court's order modifying the automatic stay to allow Equitable to foreclose under its loan documents is AFFIRMED.

### B. Bond Appeal

█ Under Bankruptcy Rule 8005, when considering a motion for stay pending appeal, the bankruptcy court "may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in inter-

---

9. Although the bankruptcy court treated failure to make payments as a ground for finding lack of adequate protection, it is actually considered a finding of "cause" for granting relief from the automatic stay. Lack of adequate protection is just one example of a "cause" for granting relief from the automatic stay under section 362(d)(1).

10. *See* Transcript of Proceedings (Sept. 22, 1992) at 300–01.

11. The Debtor asserts that the bankruptcy court failed to consider the increased bookings and the added value of the room renovations when it found a lack of adequate protection. However, as seen in the transcript of the relief from the automatic stay hearing, the bankruptcy court considered those factors but rejected them due to past failures to meet the projected schedule and the speculative nature of the projections. *See* Transcript of Proceedings (Sept. 22, 1992) at 299–301.

est." Bankr.R. 8005. The requirement of an appeal bond is an "appropriate order" under Rule 8005; its purpose is to protect the prevailing party against any loss caused by the unsuccessful attempt to reverse the bankruptcy court's decision on appeal. *In re Henderson*, 57 B.R. 660, 661 (Bankr.W.D.Va.1986). The decision of the bankruptcy court "concerning the need for and appropriate amount of the bond is entitled to great weight." *Id.* at 662.

■■■ The bankruptcy court balanced the hardships to the parties and granted the Debtor's Motion for Stay Pending appeal, but ordered the Debtor to post bonds in the amount of $25,000 to cover Equitable's appeal costs and $471,321.90 to cover interest accruing on the outstanding debt for a period of 90 days. The court also ordered the Debtor to reimburse Equitable its foreclosure sale costs of $8,500 and to escrow sufficient funds to pay 1992 real property taxes.

In this Court, both the Debtor and Equitable challenge the bankruptcy court's grant of the stay pending appeal. The Debtor argues that by requiring a bond to cover 90 days interest, the court was awarding Equitable interest twice—once when it receives the value of its claim under the plan of reorganization and again as a result of the appeal bond. Furthermore, the Debtor argues that the bond does not protect the interests of all parties, but prefers Equitable over all other creditors. Equitable, on the other hand, argues that the stay pending appeal should not have been granted because the bankruptcy court did not consider all the factors that must be present before a stay may be granted. Equitable also argues that the amount of the bond should have covered more than just 90 days interest.

In this case, the bankruptcy court required a bond in the amount of $471,321.90 to cover 90 days worth of accumulating

interest. The amount of the bond is entitled to deference and will not be disturbed. In any event, a stay pending appeal dissolves when the appeal is decided. *Cf. F.T.C. v. Food Town Stores, Inc.*, 547 F.2d 247, 249 (4th Cir.1977) (decided under analogous F.R.App.P. 8). Thus, the appeal of the bankruptcy court's order granting a stay pending appeal is MOOT.[12]

## C. Cash Collateral Appeal

■■■ Under section 363(e) of the Bankruptcy Code, a secured creditor may request the bankruptcy court to condition or prohibit the use by the debtor of cash collateral in which the secured creditor has an interest. 11 U.S.C. § 363(e). "Cash collateral" can include rents from property subject to a security interest. 11 U.S.C. § 363(a); *In re Oceanview/Virginia Beach Real Estate Assocs.*, 116 B.R. 57, 58 (Bankr.E.D.Va.1990).

In its Motion to Prohibit Use of Cash Collateral, Equitable asserted that its loan documents created a lien on the rents due under the Lease between the Debtor and the Inn. Citing *Oceanview*,[13] however, the court found that there was no properly perfected security interest in the hotel rents because the procedures of the UCC had not been followed. Further, the court held that the Debtor does not have a fiduciary duty to collect rent from the Inn. Thus, the court dismissed Equitable's motion.

In this Court, Equitable argues that *Oceanview* is factually different from this case and is therefore not controlling. Equitable contends that the plain language of the Deed of Trust documents show an assignment of rents from the Property, thus creating a lien on those rents in favor of Equitable. Further, it argues that the rent involved in this case is not hotel revenue but rather the rent from the Inn paid to the Debtor under the Lease. In addition, Equi-

---

12. The Debtor's claim that it is paying interest twice is without merit. Any recovery of interest by Equitable under the appeal bond will be offset by a corresponding reduction in recovery under the plan.

13. In *Oceanview*, the bankruptcy court held that hotel room receipts were personalty which require perfection under the UCC in order to create a lien, rather than "rents" which could be perfected under a Deed of Trust and assignment of rents. 116 B.R. at 59.

table argues that the Debtor has a fiduciary duty to collect rent from the Inn since the Debtor-in-possession is under an obligation to maximize the property of the estate. It further contends that the Debtor's only function is collecting the rent under the Debtor/Inn Lease, and the Debtor is not performing that function.

As discussed above, this Court affirmed the bankruptcy court's decision to grant Equitable relief from the automatic stay. Thus, it is in Equitable's best interests to have this case resolved as expeditiously as possible so it may foreclose under its loan documents. Furthermore, review of the bankruptcy court's dismissal of the cash collateral motion is not central to the resolution of this bankruptcy case. Accordingly, in the interests of judicial economy, this Court will WITHHOLD DECISION on this issue. However, in the unlikely event that resolution of the cash collateral issue is required, the Court will render a decision at that time.

IV. Conclusion

In sum, the bankruptcy court's decision to grant relief from the automatic stay is AFFIRMED. Accordingly, the bankruptcy court's decision to stay the order (granting relief from the automatic stay) pending appeal is MOOT. Furthermore, this Court will WITHHOLD DECISION on the bankruptcy court's order dismissing Equitable's cash collateral motion.

IT IS SO ORDERED.