In re JAMES RIVER ASSOCIATES, Debtor.

EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Appellant,

v.

JAMES RIVER ASSOCIATES, Appellee.

Civ. A. No. 4:92cv110.

United States District Court, E.D. Virginia, Newport News Division.

June 28, 1993.

Patrick Louis Hayden, McGuire, Woods, Battle & Boothe, Norfolk, VA, for Equitable Life.

Richard W. Hudgins, Newport News, VA, for James River Assoc.

### ORDER

CLARKE, District Judge.

Equitable Life Assurance Society of the United States ("Equitable") appeals an order of the United States Bankruptcy Court for the Eastern District of Virginia entered July 10, 1992 dismissing Equitable's Motion to Prohibit Use of Cash Collateral. For the reasons outlined below, the decision of the bankruptcy court is VACATED and the case is REMANDED.

### I. Facts and Procedural History

The Debtor, James River Associates, was the owner of a 15 acre parcel of land in James City County, Virginia (the "Property") upon which is situated the Williamsburg Hilton and National Conference Center (the "Hotel"). The Debtor executed and delivered a Note dated February 8, 1980, payable to Equitable in the original principal amount of $13,500,000 (the "Note"). Equitable was the holder of the Note. The Note was secured by the lien of a first Deed of Trust dated February 8, 1980 (the "Deed of Trust"). The Deed of Trust conveyed the Hotel Property along with the "rents, issues and profits" arising from the Property.

By lease dated August 1, 1979 (the "Lease"), the Debtor leased the Property to The Inn at James River, Inc. (the "Inn"). Both the Debtor and the Inn are controlled by James K. Wolosoff ("Wolosoff"). The Inn generated daily income from the operation and management of the Property as a hotel and conference center. Under the Lease, the Inn was required to pay the Debtor $125,000 a month. The Inn stopped paying rent to the Debtor in March 1991, and instead used its hotel room receipts to finance renovations to the Hotel.

On February 13, 1992, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. The Debtor was in default on the Note and Deed of Trust prior to filing its bankruptcy petition. On June 8, 1992, Equitable filed both a Motion to Prohibit Use of Cash Collateral or to Provide for Adequate Protection and a Motion for Relief from Automatic Stay.

In its Motion to Prohibit Use of Cash Collateral, Equitable asserted that it had a lien on the Debtor's rents, issues and profits which constituted the cash collateral of the Debtor. Equitable claimed that both the Debtor and Wolosoff directed the Inn not to pay the rent due under the Lease, but rather to use the money for renovations. Since interest continued to accrue on the Note, Equitable claimed it would suffer irreparable harm if the bankruptcy court did not prohibit the use of the cash collateral or otherwise require the Debtor to provide adequate protection.

On July 2, 1992, the bankruptcy court held a hearing on the cash collateral motion. The Debtor moved to dismiss the motion on the ground that there was no properly perfected security interest in the hotel room receipts. The bankruptcy court agreed with the Debtor and dismissed the motion, finding that in order to properly perfect a security interest in the hotel room receipts, the procedures of the Uniform Commercial Code ("UCC") must be followed. Further, the court held that the Debtor does not have a fiduciary duty to collect rent from the Inn under the Lease. On July 17, 1992, Equitable filed a Motion to Reconsider asserting that it had indeed followed the procedures of the UCC and thus did have a proper security interest in the hotel room receipts. By order entered July 23, 1992, the bankruptcy court denied the motion. On August 3, 1992, Equitable

appealed to this Court (the "Cash Collateral Appeal"). This Cash Collateral Appeal was subsequently consolidated with an appeal of the bankruptcy court's decision to grant Equitable relief from the automatic stay.

In *In re James River Associates*, 148 B.R. 790 (E.D.Va.1992), this Court affirmed the bankruptcy court's decision to grant Equitable relief from the automatic stay in order to foreclose on the Property pursuant to Equitable's loan documents. However, a decision on the Cash Collateral Appeal was not reached on the ground that it was not central to the automatic stay issue, and judicial economy dictated that Equitable be allowed to foreclose as soon as possible. *Id.* at 799. Equitable held that foreclosure sale on February 3, 1993 and purchased the Property for $10,700,000.

## II. Cash Collateral Appeal

Equitable has now moved for this Court to resolve the Cash Collateral Appeal. It argues that a decision on the Cash Collateral Appeal is necessary on two grounds. First, since it was the successful bidder at the foreclosure sale of the Property and the purchase price was less than the loan balance, it has a deficiency which is secured by the cash collateral. Second, it asserts that the Debtor and the Inn have accepted advance deposits from future hotel guests for room reservations and those advance deposits are part of the cash collateral. In that regard, Equitable has also moved for an immediate payment of those funds from the Debtor and the Inn.[1]

## III. Standard of Review

■ On appeal to the district court, a bankruptcy court's factual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankr.R. 8013; *see also In re Morris Communications NC, Inc.*, 914 F.2d 458, 467 (4th Cir. 1990). A finding of fact is "clearly erroneous" "when, although there is evidence to support it, the reviewing court ... is left

with the definite and firm conviction that a mistake has been made." *Morris Communications*, 914 F.2d at 467 (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

■ A bankruptcy court's legal conclusions are reviewed *de novo*. *See, e.g., Morris Communications*, 914 F.2d at 467; *In re Club Assoc.*, 951 F.2d 1223, 1229 (11th Cir.1992); *Finney v. Smith*, 141 B.R. 94, 97 (E.D.Va.1992).

## IV. Discussion

■ Under section 363(e) of the Bankruptcy Code, a secured creditor may request the bankruptcy court to condition or prohibit the debtor's use of cash collateral in which the secured creditor has an interest. 11 U.S.C. § 363(e). "Cash collateral" includes rents from property subject to a security interest. 11 U.S.C. § 363(a); *In re Oceanview/Virginia Beach Real Estate Assocs.*, 116 B.R. 57, 58 (Bankr.E.D.Va. 1990).

### A. *Lien on rents*

In *Oceanview*, the bankruptcy court held that hotel room receipts were personalty, which require perfection under the UCC in order to create a lien, rather than "rents," which could be perfected under a Deed of Trust and assignment of rents. 116 B.R. at 59. Equitable argues that *Oceanview* is factually different from this case and is therefore not controlling. Equitable contends that the plain language of the Deed of Trust documents show an assignment of rents. Further, it argues that the rent involved in this case is not hotel room receipts but rather the rent from the Inn paid to the Debtor under the Lease.

The Debtor continues to maintain that under *Oceanview*, Equitable did not perfect a security interest in the hotel room receipts. It argues that to perfect a security interest in the hotel room receipts, Equitable should have filed financing statements in "Accounts Receivables." The Debtor

1. The Debtor has not responded to Equitable's present motions. The Court will, however, consider the Debtor's briefs and argument submitted in the initial appeal.

also claims that even under the Deed of Trust, Equitable has no right to the rents because Equitable did not follow the terms of the Deed of Trust. The Debtor also claims that it was expending money on hotel renovations as required by the Deed of Trust.

■ Virginia law governs the issue of "whether an assignment of rents clause is perfected such that the post-petition rents become cash collateral in a Chapter 11 proceeding." *In re Townside Partners, Ltd.*, 125 B.R. 8, 10 (Bankr.W.D.Va.1991) (citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). "Absent contractual provisions, Virginia law requires that the mortgagee be in possession of property subject to the mortgagee's lien before the mortgagee can collect rental income." *Id.* (citing *Frayser's Adm'r v. Richmond & A.R.R. Co.*, 81 Va. 388 (1866)). However, the parties can contract otherwise, and that contractual agreement governs. *Id.* (citing Va.Code Ann. § 55–59). Thus, "the language of the deed of trust determines the status of rents as cash collateral" in bankruptcy proceedings. *Id.* Moreover, in order to be perfected, the assignment of rents clause must be "absolute," evidenced by the intention to make a "present and irrevocable" assignment of rents. *Id.*

Paragraph 19 of the Deed of Trust [2] states that the Debtor covenants and agrees that it:

> will not assign the whole or any part of the rents, income or profits arising from the premises without the written consent of [Equitable] and any assignment thereof shall be null and void; that in the event of any default by [the Debtor] in the performance of any of the terms, covenants and provisions of this deed of trust or the note, it shall be lawful for [Equitable] to enter upon and take possession of the premises with or without the appointment of a receiver, or an application therefor, and to *operate*

*or* let the same, either in its own name, or in the name of [the Debtor], and to receive the rents, issues and profits of the premises and to apply the same, after the payment of all necessary charges and expenses, on account of the amount hereby secured; that said rents *income* and profits are hereby *presently* assigned [3] to [Equitable]; and that upon notice and demand, [the Debtor] will transfer and assign to [Equitable], in form satisfactory to [Equitable], the lessor's interest in any lease now or hereafter affecting the whole or any part of the premises. *[P]rovided, however, that until any default exists under this Deed of Trust or Note, [the Debtor] may receive such rents, income and profits, but upon any such default, [Equitable] shall thereafter be entitled to receive and apply same after payment of all charges and expenses.*

*See* Deed of Trust (dated Feb. 8, 1980), ¶ 19.

■ In this case, the loan documents do state a present and irrevocable assignment of rents. Specifically, by changing the language in the printed Deed of Trust from an assignment of rents only upon default to a present assignment of rents, it is clear that a present and irrevocable assignment of rents was intended. Simply finding an assignment of rents, however, does not completely resolve the issue. The question remains whether any "rents" exist.

The answer depends on whether the Debtor and the Inn are treated separately or as one. If the Debtor and the Inn are separate companies, then the Lease must be considered. Under the Lease, the Inn was required to pay the Debtor $125,000 per month rent for the Property. In turn, the Inn operated the Hotel and collected the hotel room receipts. In that case, money collected by the Inn would be hotel room receipts; however, money collected by the Debtor would not be room receipts, but rather rent due under the Lease. The UCC

---

**2.** The Deed of Trust consists of a printed form with typewritten additions; those additions are underlined.

**3.** The language "are hereby presently assigned" replaced the language in the printed Deed of Trust that stated "are, in the event of any such default, hereby assigned."

would not govern perfecting a security interest in rent of that nature, *see* Va.Code Ann. § 8.9–104(j) (Article 9 of the UCC does not apply to "the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder"), and *Oceanview* would not apply. Instead, a lien on the rent due under the Lease would be perfected by the assignment of rents clause in the Deed of Trust, which, as discussed above, Equitable has made.

If, on the other hand, the Debtor and the Inn are treated as one company because they are both controlled by Wolosoff, then it may be proper to disregard the Lease and treat all income from the Property as hotel room receipts and not rent due under the Lease. In that case, *Oceanview* controls and would require that a lien on those hotel room receipts be perfected pursuant to the UCC.[4]

By finding that *Oceanview* controlled, the bankruptcy court implicitly treated the Debtor and the Inn as one; however, the court did not make any specific factual findings on the issue. The decision to pierce a corporate veil and treat two corporations as one is a decision "that is to be taken reluctantly and cautiously." *In re County Green Ltd. Partnership*, 604 F.2d 289, 292 (4th Cir.1979) (citing *DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685 (4th Cir.1976); *see also In re Moran*, 120 B.R. 379, 387 (Bankr.W.D.Va.1990). Without these findings, it is impossible for this Court to properly determine whether the monies at issue are hotel room receipts, which required perfection under the UCC, or rents due under the Lease, which were perfected by the assignment of rents clause in the Deed of Trust. For this reason, the decision of the bankruptcy court is **VACATED**, and the case **REMANDED** for additional findings.

### B. *Fiduciary duty to collect rent*

If the Lease is given effect and Equitable is therefore given the benefit of its perfected security interest in the rent due under the Lease, the fact still remains that the Inn stopped paying that rent to the Debtor in March 1991. In that regard, Equitable argues that the Debtor had a fiduciary duty to collect that rent since the debtor-in-possession is under an obligation to maximize the property of the estate. It further contends that the Debtor's only function was collecting the rent due under the Lease, and the Debtor was not performing that function.

In *Louisiana World Exposition v. Federal Insurance Co.*, the Fifth Circuit held that

> a debtor-in-possession performs the same functions as a trustee in a reorganization. The debtor-in-possession, therefore, "both enjoys the rights and must fulfill the duties of a trustee." As one of its duties, a trustee is not only entitled to but *must* collect the property of the estate. Moreover, as the Supreme Court has held, "the trustee is 'accountable for all property received,' ... *and has the duty to maximize the value of the estate*" ....

858 F.2d 233, 245–46 (5th Cir.1988) (citations omitted) (emphasis in original). In this case, the rent due the Debtor from the Inn under the Lease constituted property of the estate. Accordingly, the Debtor had a fiduciary duty to collect that rent. *Cf. In re Tulane Hotel Investors Limited Partnership*, 79 B.R. 657, 658 (E.D.La.1987) ("The trustee had a duty to collect rent for the defendants' post-petition use of property within the estate.").

### C. *Repairs and maintenance*

Notwithstanding the Debtor's obligation to collect rent due under the Lease (assuming the Lease is given effect), Equitable's cash collateral lien on that rent may be limited because the Debtor also had the duty to expend 3½% of the Hotel's gross receipts on repairs and maintenance of the

---

**4.** In its Motion to Reconsider, Equitable submitted evidence and argued that it did perfect a lien on the hotel room receipts pursuant to the UCC. It is not clear whether the bankruptcy court considered that evidence when it denied Equitable's motion. On remand, the bankruptcy court should determine whether that evidence was properly before the court, and if so, whether a lien was thereby perfected.

Hotel. Section 2(a) of the Rider attached to the Deed of Trust provides that:

[the Debtor] shall operate, furnish, maintain and equip the Hotel (hereinafter defined) in a manner consistent with a first class luxury hotel and conference center operation; and ... during each 12–month period ... expend at least 3½% of Gross Receipts (hereinafter defined) for a twelve month period from all operations of the premises ... for Repairs and Maintenance (hereinafter defined) to such premises....

*See* Deed of Trust, Rider (dated Feb. 8, 1980), § 2(c)(iii). Furthermore, section 7 of the Rider states that in the event of a conflict between the printed form portion of the Deed of Trust and the Rider, the Rider shall prevail. *See id.* at § 7.

Therefore, even if Equitable is found to have a cash collateral lien either from its perfected security interest in the rent due under the Lease by the assignment of rents clause in the Deed of Trust or because it properly perfected a security interest in the hotel room receipts by following the requirements of the UCC, the Debtor still had a duty to see that 3½% of the Hotel's gross receipts were spent on repairs and maintenance of the Hotel. Because the bankruptcy court ruled that Equitable had no such cash collateral lien, it had no occasion to determine whether the 3½% of gross receipts was being spent on repairs and maintenance. On remand, if the bankruptcy court finds that Equitable does have a lien on the cash collateral of the Debtor, then it should also determine what portion, if any, of that lien is extinguished by the Debtor's required expenditures for repairs and maintenance.

### D. *Equitable's advance deposits motion*

According to Equitable, the Debtor and the Inn have accepted advance deposits from future hotel guests for room reservations and those advance deposits are part of the cash collateral in which it has a lien. Therefore, Equitable has moved for an im-

mediate payment of those funds from the Debtor and the Inn. A decision by this Court on Equitable's motion is improper for two reasons. First, as discussed above, the bankruptcy court has yet to resolve whether Equitable has a lien on the Debtor's cash collateral. Second, the motion involves several issues [5] which must be resolved by the bankruptcy court. Accordingly, Equitable's motion for immediate payment of advance deposits is **DISMISSED** without prejudice.

### V. Conclusion

For the reasons outlined above, the decision of the bankruptcy court to dismiss Equitable's Motion to Prohibit Use of Cash Collateral is **VACATED,** and the case is **REMANDED** to the bankruptcy court for further proceedings consistent with this Order. Furthermore, Equitable's motion for immediate payment of advance deposits is **DISMISSED** without prejudice.

The Clerk is **DIRECTED** to send a copy of this Order to counsel for the parties, the United States Trustee, and the United States Bankruptcy Court for the Eastern District of Virginia.

**IT IS SO ORDERED.**

---

**5.** Such as the amount of advance deposits in question, and whether, if the Debtor and the Inn

are treated as separate companies, the bankruptcy court has jurisdiction over the Inn.